# EXHIBIT D

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| JENNY PHENIX, | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| VILLA VIE RESIDENCES INCORPORATED, VILLA VIE RESIDENCES CORPORATION, and VV ODYSSEY LLC | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No.  1:25-cv-00378

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  VILLA VIE RESIDENCES CORPORATION
C/O VILLALBA, KATHRYN
1413 SW 156th Way
Pembroke Pines, FL 33027

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Gary F. Seitz, Esq.
Gellert Seitz Busenkell & Brown LLC
1202 N. Orange Street, Suite 300
Wilmington, DE 19801
gseitz@gsbblaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:        03/28/2025                    /s/ Randall Lohan

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:25-cv-00378

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | | |
|---|---|---|
| JENNY PHENIX | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:25-cv-00378 |
| VILLA VIE RESIDENCES INCORPORATION, et al. | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  VILLA VIE RESIDENCES CORPORATION
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within    30    days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:       03/28/2025                                        /s/ Gary F. Seitz
                                                    *Signature of the attorney or unrepresented party*

                                                         Gary F. Seitz
                                                         *Printed name*

                                              Gellert Seitz Busenkell & Brown LLC
                                              1202 N. Orange Street, Suite 300
                                              Wilmington, DE 19801
                                                           *Address*

                                                    gseitz@gsbblaw.com
                                                       *E-mail address*

                                                      215-238-0011
                                                     *Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| JENNY PHENIX | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:25-cv-00378 |
| VILLA VIE RESIDENCES INCORPORATION, et al. | ) | |
| *Defendant* | ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To:  VILLA VIE RESIDENCES CORPORATION

*(Name of the plaintiff's attorney or unrepresented plaintiff)*

    I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

    I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

    I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

    I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from     03/28/2025    , the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Printed name of party waiving service of summons*

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

---

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

    Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

    "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

    If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

    If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| JENNY PHENIX, | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )     Civil Action No.  1:25-cv-00378 |
| | ) |
| VILLA VIE RESIDENCES INCORPORATED, VILLA | ) |
| VIE RESIDENCES CORPORATION, and VV | ) |
| ODYSSEY LLC | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   VILLA VIE RESIDENCES INCORPORATED
C/O DELAWARE BUSINESS INCORPORATORS, INC.
3422 OLD CAPITOL TRL STE 700
WILMINGTON, DE 19808

 

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Gary F. Seitz, Esq.
Gellert Seitz Busenkell & Brown LLC
1202 N. Orange Street, Suite 300
Wilmington, DE 19801
gseitz@gsbblaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:     03/28/2025     _____

/s/ Randall Lohan
_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   1:25-cv-00378

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                          _____
                                                      *Server's signature*

                                               _____
                                                      *Printed name and title*


                                               _____
                                                      *Server's address*

Additional information regarding attempted service, etc:

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| JENNY PHENIX | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:25-cv-00378 |
| VILLA VIE RESIDENCES INCORPORATION, et al. | ) |
| *Defendant* | ) |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: VILLA VIE RESIDENCES INCORPORATION

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within __30__ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: __03/28/2025__

/s/ Gary F. Seitz
*Signature of the attorney or unrepresented party*

Gary F. Seitz
*Printed name*

Gellert Seitz Busenkell & Brown LLC
1202 N. Orange Street, Suite 300
Wilmington, DE 19801
*Address*

gseitz@gsbblaw.com
*E-mail address*

215-238-0011
*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | | |
|---|---|---|
| JENNY PHENIX | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   1:25-cv-00378 |
| VILLA VIE RESIDENCES INCORPORATION, et al. | ) | |
| _Defendant_ | ) | |

## WAIVER OF THE SERVICE OF SUMMONS

To:   VILLA VIE RESIDENCES INCORPORATION
      _(Name of the plaintiff's attorney or unrepresented plaintiff)_

      I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

      I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

      I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

      I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____03/28/2025_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____

             _Signature of the attorney or unrepresented party_

_____
    _Printed name of party waiving service of summons_

                          _Printed name_

                          _Address_

                          _E-mail address_

                          _Telephone number_

---

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

      Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

      "Good cause" does _not_ include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

      If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

      If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| JENNY PHENIX, | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) Civil Action No.  1:25-cv-00378 |
| VILLA VIE RESIDENCES INCORPORATED, VILLA VIE RESIDENCES CORPORATION, and VV ODYSSEY LLC | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   VV ODYSSEY LLC
Trust Company Complex
Ajeltake Road, Ajeltake
Majuro MH 96960
Marshall Islands

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Gary F. Seitz, Esq.
Gellert Seitz Busenkell & Brown LLC
1202 N. Orange Street, Suite 300
Wilmington, DE 19801
gseitz@gsbblaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:       03/28/2025                                    /s/ Randall Lohan
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   1:25-cv-00378

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| JENNY PHENIX | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No.  1:25-cv-00378 |
| VILLA VIE RESIDENCES INCORPORATION, et al. | ) |
| _Defendant_ | ) |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  VV ODYSSEY LLC

_(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)_

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within __60__ days _(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)_ from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:  ___03/28/2025___

_/s/ Gary F. Seitz_
_Signature of the attorney or unrepresented party_

Gary F. Seitz
_Printed name_

Gellert Seitz Busenkell & Brown LLC
1202 N. Orange Street, Suite 300
Wilmington, DE 19801
_Address_

gseitz@gsbblaw.com
_E-mail address_

215-238-0011
_Telephone number_

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| JENNY PHENIX | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:25-cv-00378 |
| VILLA VIE RESIDENCES INCORPORATION, et al. | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To: VV ODYSSEY LLC
   *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____03/28/2025_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

---

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- /
|   | / |   |
|---|---|---|
| **JENNY PHENIX,** | / |   |
|   | / |   |
| Plaintiff, | / | CASE NO. : _____ |
|   | / |   |
| v. | / |   |
|   | / |   |
| **VILLA VIE RESIDENCES** | / | **In Admiralty** |
| **INCORPORATED** | / |   |
| # 700 -3422 Old Capital Trail | / |   |
| PMB 1461 | / |   |
| Wilmington, DE 19808, | / |   |
|   | / |   |
| **VILLA VIE RESIDENCES** | / |   |
| **CORPORATION** | / |   |
| 1413 SW 156th Way | / |   |
| Pembroke Pines, FL 33027, | / |   |
|   | / |   |
| & | / |   |
|   | / |   |
| **VV ODYSSEY LLC** | / |   |
| Trust Company Complex | / |   |
| Ajeltake Road, Ajeltake | / |   |
| Majuro MH 96960 | / |   |
| Marshall Islands, | / |   |
|   | / |   |
| Defendants. | / |   |

------------------------------------------------------- /

## VERIFIED COMPLAINT

Plaintiff, **JENNY PHENIX**, by and through her undersigned counsel, hereby sues the

Defendants, **VILLA VIE RESIDENCES INCORPORATION, VILLA VIE RESIDENCES**

**CORPORATION** & **VV ODYSSEY LLC** collectively referred to herein as **"VILLA VIE**

**GROUP",** and alleges as follows:

## PARTIES

1.        Plaintiff, **JENNY PHENIX**, was and is a resident of and domiciled in the state of

Florida.

2.      Upon information and belief, at all times material, Defendant, **VILLA VIE RESIDENCES INCORPORATION ("VVRI"),** was a company incorporated in the State of Delaware with a place of business and agent for service of process identified above operating a residential cruise ship business worldwide using the *CRUISE SHIP ODYSSEY* and acts as an agent for VVRC, VVO and VVI, for all purposes.

3.      Upon information and belief, at all times material, Defendant, **VILLA VIE RESIDENCES CORPORATION ("VVRC"),** was a company incorporated in the State of Florida and acts as an agent for VVRI and VVI for all purposes with a principal place of business in Pembroke Pines, Florida.

4.      Upon information and belief, at all times material, Defendant, **VV ODYSSEY LLC ("VVO"),** was and is a citizen of the foreign nation of the Marshall Islands, is incorporated in the Marshal Islands and maintains its principal place of business in the Marshall Islands as the owner of the *CRUISE SHIP ODYSSEY* operated by VVRI and VVRC.

5.      **VVRI, VVRC & VVO** market and hold themselves out to the public as the **VILLA VIE GROUP** for purposes of selling residential cruise ship packages on the *CRUISE SHIP ODYSSEY*.

6.      At all times material, the **VILLA VIE GROUP** have maintained a substantial course of trade in or affecting commerce in the United States and the State of Delaware.

7.      The contract issued by the **VILLA VIE GROUP** in connection with this matter specifically provided:

10. It is agreed by and between Voyager and carrier that all claims, disputes, and matters whatsoever arising under, arising out of, or relating to this circumnavigation contract shall be litigated in and before a court of competent jurisdiction located in Wilmington Delaware, U.S.A. This circumnavigation contract provides for the exclusive resolution of disputes through individual legal action on the voyager's own behalf instead of through any class action. Even if the applicable law provides otherwise, Voyager agrees that any lawsuit against the carrier whatsoever shall be litigated by Voyager individually and not as a member of any class or as part of a class action, and Voyager expressly agrees to waive any law entitling Voyager to participate in a class action.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over this matter pursuant to 28 USC §1333(1) (admiralty) and the contractual language contained in the residential cruise ship rental agreement or cruise ticket ("Agreement"). The residential passage contract is a maritime contract governed by the general maritime law.  The incidents set forth herein have a potentially disruptive impact on maritime commerce.  The activity set forth herein shows a substantial relationship to a traditional maritime activity. It is a breach of a maritime contract for a cruise operator to accept passenger funds and baggage to take a passenger on a trip and then cancel the trip. Admiralty jurisdiction also exists for common torts committed against cruise ship passengers even when they are not onboard the cruise ship.

9.      The Court has subject matter jurisdiction over this matter pursuant to 28 USC §1367(a) (supplemental) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue in the United States District Court for the District of Delaware is appropriate pursuant to the forum selection clause contained in the residential cruise ship package agreement or cruise ticket and contract terms between Plaintiff and Defendants ("Agreement").

11.     At all times material, Defendants, **VILLA VIE GROUP,** personally or through their agents:

A.       Operated, conducted, engaged and/or carried on a worldwide business

venture advertised throughout the United States, including the State of Delaware;

B.     Were engaged in substantial business activity in the State of Delaware marketing and selling their worldwide business venture;

C.     Owned and operated a vessel and provided a vessel for cruises in furtherance of their worldwide business venture;

D.     Regularly contact consumers by telephone, electronic mail, US. Mail and other instrumentalities of interstate commerce directed at consumers in the United States including the State of Delaware;

E.     Transacted business in the state of Delaware which submits Defendants to the jurisdiction and venue of the Court;

F.     Specifically subjected themselves to the jurisdiction by stipulation in their Agreements;

G.     Further, Defendants are subject to the jurisdiction of the Court pursuant to 28 U.S.C. § 1333.

12.     All conditions precedent to the institution of this action have been satisfied, or otherwise excused, including all terms required by the terms and conditions of Defendants' Agreement.

## **GENERAL ALLEGATIONS**

13.     At all times material hereto, the causes of action asserted in the Complaint arise under the general maritime law of the United States.

14.     At all times material hereto, VILLA VIE GROUP owned, operated, managed, maintained and/or controlled the subject vessel, the *CRUISE SHIP ODYSSEY.*

15.     At all times material, the VILLA VIE GROUP operated the *CRUISE SHIP ODYSSEY* in navigable waters.

16.     Defendant VILLA VIE GROUP, as a common carrier, was engaged in the business of providing to the public, and to the Plaintiff in particular, for compensation, residential cruise services aboard its vessel, the *CRUISE SHIP ODYSSEY.*

17.     Plaintiff entered into a written business dealings with Defendants on December 5, 2023 (segments 1-17) [Exhibit A], December 27, 2023 (remove segments 1-2) [Exhibit B] and April 14, 2024 (segments 1-2) [Exhibit C] ("Agreement").

18.     As set forth in the Agreement, Plaintiff rented for residential occupancy a Villa on board Defendants' vessel with a projected departure date of May 15, 2024.

19.     Plaintiff had a reasonable expectation of cooperation and mutual benefit with Defendants that went beyond the letter of the Agreement. Plaintiff expected the Defendants to conduct themselves in ways that adhere to the spirit of their deal.

20.     After signing the Agreement, VILLA VIE GROUP purported to change the terms and conditions of the Agreement including the online terms to add nondisclosure terms and limitations or exclusions of any liability without Plaintiff's agreement or consent.

21.     No information provided by VILLA VIE GROUP to Plaintiff, except pricing and itinerary, had any quality of confidence such that it would warrant any form of protection from disclosure.

22.     No information provided by VILLA VIE GROUP to Plaintiff, except pricing and itinerary not already disclosed to the public, were imparted in circumstances importing an obligation of confidence.

23.     No information provided by VILLA VIE GROUP to Plaintiff, was disseminated to the detriment of VILLA VIE GROUP.

24.     Plaintiff was not provided consideration for any purported changes in terms and conditions by VILLA VIE GROUP.

25.     Provisions in VILLA VIE GROUP's online terms that were not in effect when the original Agreement was signed are illusory and are not enforceable.

26.     Plaintiff, along with other passengers who had leased cabins aboard Odyssey, began to arrive for the ship's original departure date in May.

27.     Plaintiff was held over in Belfast for months because of VILLA VIE GROUP's delays.

28.     In anticipation of embarking upon a voyage pursuant to the Agreement, Plaintiff turned various items of baggage over to Defendants.

29.     Pursuant to the Agreement, the Defendants accepted receipt of the Plaintiff's baggage.

30.     Upon information and belief, the Plaintiff's baggage was stowed aboard the *CRUISE SHIP ODYSSEY.*

31.     At all times relevant, Plaintiff's transactions with the Defendants were for Plaintiff's personal and household residential use.

32.     In connection with the transactions, Defendants made material representations that were false as follows:

   A.   VILLA VIE GROUP unilaterally terminated its contract with Plaintiff despite having notified Plaintiff that the ship was ready to sail causing her to travel to the port of embarkation on multiple occasions.

   B.   At the time the contract was agreed, Virtual Windows was a big selling point in the inside cabin that Plaintiff had booked but that feature was removed with no consideration or offer of compensation.

   C.   Plaintiff's cabin size was unilaterally reduced significantly from what was advertised on the original website from 160 sf to 130 sf.

   D.   Advised that Plaintiff's Cabin was going to be completely remodeled but the final

6

Cabin had minimal changes and looked nothing like the beautiful photo renderings that were on the website.

E.      The original all-inclusive package Plaintiff agreed to included ALL food. With only 3 restaurants on the ship, a $35 cover charge was added to the specialty restaurant, up charge for room service added, and all snacks outside of dining hours were at a fee

F.      The Cabin reserved by Plaintiff was not be available for an undetermined period of time and she was assigned temporary cabins. Construction would be ongoing during the cruise also for an undetermined period of time in several areas.

G.      The restaurant availability was reduced to only one restaurant when boarding was scheduled for mid-July - 2 months AFTER planned embarkation date of May 15.

H.      Medical Center and pharmaceuticals available was never clarified. Many prescriptions would not be available and residents would have to fend for themselves in foreign countries. Two doctors, one male one female were to be available at all times, that was changed to only one at a time.

I.      Culinary Center where Plaintiff could cook her own food was removed.

J.      Spa menu was released with exorbitantly high prices.

K.      Plaintiff was notified of delays in embarkation quite often with only a few hours' notice causing her to scramble for last minute hotel rooms at last minute high prices, quite often hotels would be booked full so she would have to pack up and move because of the short notice. This happened well over a dozen times.

L.      Total changes in itinerary numerous times, segment 2 changed 100% eliminating all US and Canadian ports, segment 3 originally to Embark in Miami, changed to

7

Bahamas.

M.     Losing the Miami Port meant Plaintiff had to cancel Segment 2 to get back to Miami in person to pick up all her belongings and ship everything to the Bahamas, fly herself, costing an excessive amount of unexpected additional expense, after having just spent an unexpected thousands of dollars on her credit cards for the prior 2.5 months living expenses.

N.     All of the Canadian and US ports were unilaterally eliminated from the itinerary without a reason. Press reports suggested that the ship is not able to pass the US Coast Guard or Canadian safety regulations. Other reports suggested the ship avoided paying the Federal Maritime Commission Bond for customers embarking in a US port. As a result she was no longer covered with her insurance policy.

O.     All of the ports in China were removed from the itinerary. Press reports suggested that China does not allow ships older than 30 years. Plaintiff previously paid for and went through the difficult process of getting a Chinese visa in preparation.

P.     Ongoing roller coaster ride of the numerous delays usually announced at the last minute.

33.     Plaintiff became a paying residential passenger, expecting to obtain the benefit of the Defendants' representations and lawfully board the *CRUISE SHIP ODYSSEY* when it embarked.

34.     Defendants knew or reasonably should have known at the time the material representations were communicated to Plaintiff that at the time the representations were false.

8

35. Defendants knew or reasonably should have known at the time the material representations were communicated to Plaintiff that Plaintiff would rely on those representations to her detriment.

36. Defendants knew or reasonably should have known at the time the material representations were communicated to Plaintiff that Plaintiff intended to reside aboard the *CRUISE SHIP ODYSSEY* for an extended period of time resulting in her liquidating businesses and other property and cancelling or terminating various arrangements all in preparation of the extended voyage.

37. After a four-month delay in preparing the ship to embark and changing the itinerary in a way that frustrated Plaintiff's plans to collect belongings at a port stop in Miami, while waiting in Belfast, Plaintiff highlighted her concerns to fellow passengers in private WhatsApp conversations.

38. Plaintiff also privately voiced concerns that refurbishment work could carry on, even after the ship left Belfast, and that she would have to use a temporary cabin as the one she booked was still being used by the crew.

39. Plaintiff did not provide consent to share her private messages with anyone else.

40. Ireland has been part of the European Union since January 1, 1973.

41. Sharing private conversations from messaging apps without consent is illegal under the Ireland's privacy laws and the European Union's General Data Protection Regulation (GDPR) as it amounts to sharing personal data without a lawful basis, breaching the individual's protected right to privacy.

42. The GDPR mandates that all personal data, including private messages, can only be shared with the specific, informed, and unambiguous consent of the individuals involved.

9

43.     The sharing and then use of Plaintiff's private messages by VILLA VIE GROUP without her consent was unlawful.

44.     Upon notification from Defendants that the ship was again ready to board, Plaintiff traveled back to Belfast arriving on July 18, 2024.

45.     On July 19, 2024, Defendants emailed Plaintiff purporting to unilaterally cancel the Agreement due to cancellation of voyage Segments 1 and 2 and for behavior impacting community morale specifically identified as "continuous complaints and negativity". [Exhibit D]

46.     In a statement released to the press, Mike Petterson, the chief executive of VILLA VIE GROUP, said: "Ms Phenix broke multiple terms and conditions and signed a non-disclosure agreement. The founding residents voted and agreed to uphold her suspension and we plan on respecting that decision.   We have nothing else to comment on the ongoing dispute."

47.     Mr. Petterson's statement was knowingly false.  The Agreement cancelled by Defendants [Exhibit A] did not include any non-disclosure requirements.  Plaintiff had already cancelled the contract addendum for Segments 1 and 2. The Notice of Termination cited no provision of any term or condition applicable to Plaintiff.

48.     The cancellation of Segments 1 and 2, was not a valid reason to cancel Segment 3.

49.     The Plaintiff's behavior was no different than several other similarly situated passengers whose contracts were not terminated.

50.     The purported grounds of cancellation were unlawfully obtained, false, specious and without merit.

51.     Under the clear and unambiguous terms of the Agreement, the Agreement did not

provide for cancellation for the purported grounds alleged.

52.     Defendants conduct purporting to unilaterally cancel the Agreement was dishonest and an abuse of power in the circumstances.

53.     VILLA VIE GROUP drafted the Agreement. Any ambiguous terms of the Agreement must be construed against the drafter.

54.     Upon information and belief, Defendants failed to adequately investigate the purported grounds of cancellation and acted maliciously in the circumstances.

55.     The unilateral cancellation of the Agreement was a breach of its terms. Defendants' refusal to honor contractual obligations set forth in the Agreement is a breach of contract.

56.     Despite the cancellation, Defendants have failed to return the deposit totaling $18,656 belonging to the Plaintiff. Instead, $7962 was refunded and $3464 was awarded as a result of a credit card dispute.  Defendants failed to refund the balance of $7230.

57.     Plaintiff has suffered extreme anxiety and depression as a result of the defendants' conduct. The trauma caused has required her to seek professional treatment.

58.     As a result of Defendants' conduct in breach of the Agreement, Plaintiff has been damaged as follows:

A.     Portion of refund not returned: $7,230.00.

B.     Unreimbursed travel expenses in the amount of $ 31,681.00.

C.     Cost of cover (obtaining substitute services less the cost agreed) in the amount of no less than $100,000.00.

D.     Loss of business reputation or goodwill directly resulting from the breach and misrepresentations in an amount to be determined at trial.

     E.      Cost of mitigating damages in an amount to be determined at trial

     F.      Fees for legal advice or other professional services directly related to addressing the breach in an amount to be determined at trial.

## COUNT I – BREACH OF CONTRACT

59.     Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

60.     On December 27, 2023, Plaintiff and Defendants entered into a written agreement.

61.     Pursuant thereto, Plaintiff timely paid all deposits due pursuant to the terms and conditions set forth in the Agreement.

62.     The Defendants agreed to provide Plaintiff with residential cruise ship services in accordance with the Agreement.

63.     Plaintiff delivered funds to Defendants in the sum of $14,391.00.

64.     Defendants failed to provide Plaintiff with residential cruise ship services as set forth in the Agreement.

65.     Defendants unilaterally cancelled the Agreement without good cause.

66.     As Plaintiff waited in Belfast to eventually board the ship for her promised cruise residency, on July 19, 2024 Defendants sent Plaintiff a Notice of Termination of Contract by email.

67.     Defendants based their decision on two reasons – both of which are inconsistent with the terms of the contract. Neither reason cited any specific term or condition of the written contract.

68.     Defendants then refused to have a meeting with or any discussion with Plaintiff regarding the facts and circumstances relied upon in the unilateral cancellation of the contract.

69.     Subsequently, Defendants proposed possible reinstatement terms and conditions that establish the invalidity of the reasons used to cancel Plaintiff' contract but never followed up with Ms. Phenix.

70.     Upon information and belief, Defendants have actively marketed the Villa booked by Plaintiff for sale at a price that is nearly $100,000.00 higher than the price it was sold to Plaintiff in the Agreement evidencing an intentional intention to deprive the Plaintiff of the benefit of her bargain for Defendants own personal gain.

71.     By reason of the facts and circumstances stated above, Defendants have breached the Agreement.

72.     At all times relevant to this litigation, as set forth in the Agreement, Defendants were in a contractual relationship with Plaintiff and owed a duty to Plaintiff to act in good faith and deal fairly with her.  The Plaintiff timely performed all of her obligations under the Agreement.

73.     Implied in the Agreement is a duty of good faith and fair dealing. This duty is read into the Agreement as a matter of law.

74.     Defendants have breached their duty of good faith and fair dealing by providing assurances to Plaintiff that she would embark on the voyage, notifying Plaintiff that the ship was ready to board, causing Plaintiff to travel to Belfast, Ireland, causing Plaintiff to turn her baggage over to Defendants, and later refusing to honor those assurances and prohibiting her from boarding for discriminatory reasons.

75.     Defendants have breached their duty of good faith and fair dealing by unreasonably withholding passage aboard without justification in a discriminatory fashion.   The unilateral termination of the Agreement with Plaintiff unfairly prevented the Plaintiff from reaping the full

benefits and rights due under the Agreement and marketing of her unit for substantially more than what she had agreed to pay evidences an improper method of gaining financial advantage.

76.     Defendants have breached their duty of good faith and fair dealing by treating Plaintiff in a manner that is objectively deceitful, dishonest, and unreasonable.

77.     Plaintiff suffered substantial additional travel, boarding and replacement or cover costs as a result of the Defendants' breach of the duty of good faith and fair dealing.

78.     Defendants breached that duty on more than one occasion by wrongfully converting, taking, utilizing or managing property and financial interests of the Plaintiff.

79.     Such acts and omissions leading to the Defendants' breach of their duty to deal in good faith and fairly with Plaintiff were the actual and proximate cause of harm to Plaintiff.

80.     Defendants'' conduct was outrageous, with their acts being done with malice or bad motives or reckless indifference to the interests of Plaintiff.

81.     Damages for disappointment and distress resulting from breach of a residential crise agreement under the maritime law are not capable of precise calculation and must be assessed according to the subjective disappointment and distress the Plaintiff has suffered in the circumstances.

82.     By reason of the facts and circumstances stated above, Plaintiff has suffered distress, disappointment, pain and suffering, vexation and discomfort consequent upon physical inconvenience and thus has been damaged by Defendants in the sum of no less than $300,000.00.

## COUNT II – PROMISSORY ESTOPPEL

83.     Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

84.     In the alternative to Count I, Defendants are liable to Plaintiff for promissory

14

estoppel.

85.     Defendants sufficiently and unambiguously promised to permit Plaintiff to lawfully board and embark on the *CRUISE SHIP ODYSSEY.*

86.     Plaintiff's reliance on these promises was foreseeable by Defendants because Defendants are in the business of providing to the public, and to the Plaintiff in particular, for compensation, residential cruise services aboard its vessel, the *CRUISE SHIP ODYSSEY* and Defendants understand the reason and purpose for providing such services.

87.     As a result of Defendants' promises to provide residential cruise services aboard its vessel and subsequent failure to fulfill their obligations, Plaintiff has been damaged in the amount of no less than $300,000.00.

## COUNT III – CONVERSION

88.     Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

89.     Defendants are liable to Plaintiff for conversion of the funds that were paid to Defendants for which nothing in return was received despite demand.

90.     Plaintiff has a possessory right or interest in the cash value of the funds paid to Defendants over which Defendants have exercised dominion or interference in derogation of Plaintiff's rights.

91.     Plaintiff paid tangible cash to Defendants in the amount of $14,391.00 to obtain the right to board and embark upon the residential cruise as a Voyager. However, Plaintiff never obtained such right or benefit because Defendants cancelled the Agreement without refund of any deposit despite the embarkation of the vessel with Plaintiff's baggage but without her.

92.     Defendants acts of conversion were committed with malice and with reckless and

willful disregard of Plaintiff's rights.

93.     As a result of Defendant's acts of conversion, Plaintiff has been damaged in the amount of no less than $14,391.00.

### COUNT IV – UNJUST ENRICHMENT

94.     Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

95.     In the alternative to Counts I and II, Defendants are liable to Plaintiff for unjust enrichment.

96.     As the result of Plaintiff's payments to Defendants without value provided to Defendants in connection with the expected residential cruise services, Defendants were enriched by an amount of no less than $150,000.00 for which Defendants failed to deliver on the purpose and intent of the Agreement.

97.     Defendants have not and cannot provide Plaintiff with the value and purpose for which Plaintiff paid the funds, and Defendants has refused Plaintiff's request for refund.

98.     As a result, Defendants have been unjustly enriched at the expense of Plaintiff, to the extent of no less than $150,000.00, and it is against equity and good conscience to allow Defendants to retain the benefits bestowed upon it as alleged here.

### COUNT V – CONSUMER FRAUD AND DECEPTIVE PRACTICES

99.     Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

100.    Defendants' conduct directed toward Plaintiff violated the applicable Consumer

Fraud Act[1] and the Deceptive Trade Practices Act[2].

101.    Consumer fraud occurred when Defendants made misrepresentations during the sale of residential cruise packages to Plaintiff while she and they were located in Florida. The fraud involved the deception set forth above.

102.    Defendants trade practices were deceptive because the businesses made material misrepresentations about the quality or benefits of their goods and services as set forth above.

103.    Defendants are prohibited from making false statements about their own goods or services or the goods and services offered by other businesses.

104.    At all times material hereto, it was the duty of Defendants to provide Plaintiff with truthful information under the circumstances pertinent to the sale of residential cruise packages.

105.    The Defendants' statements were material to Plaintiff in her decision to transact business with Defendants.

106.    Plaintiff relied upon the Defendants' misrepresentations and was injured as a result. Plaintiffs have suffered loss of money or property as a result of Defendant's actions.

107.    Defendants' actions were intended to cause Plaintiffs financial and other injury and constituted "fraud" and "malice" thereby entitling Plaintiff to punitive damages, in addition to actual damages.

## COUNT VI – FRAUD, DECEIT, AND MISREPRESENTATION

108.    Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

109.    In the alternative to Count V, Defendants engaged in a fraudulent scheme, artifice and device with the purpose of extracting illegal and exorbitant charges from Plaintiff.

---

[1] Florida Deceptive and Unfair Trade Practices Act.
[2] Florida Deceptive and Unfair Trade Practices Act.

Defendants made the forgoing false statements, knowing them to be false or acting recklessly with regard to the falsity, and with the intent that Plaintiffs act on the statements.

110.    These statements were material to Plaintiff in her decision to transact business with Defendants.

111.    Plaintiff relied upon the Defendants' misrepresentations and suffered losses and damages as a result.

112.    Plaintiff has during her entire career enjoyed a good reputation, both generally and in her occupation.

113.    Plaintiff is informed and believes, and based on that information and belief alleges, that at all times mentioned in this complaint, Defendants employed agents and employees, including CEO Mike Petterson and COO Kathy Villalba, in doing the things alleged in this complaint such individuals were acting within the course and scope of such agency and employment.

114.    Defendants communicated false statements about Plaintiff to others including the press.  For example, Defendants communicated the following to the *Mirror*[3]:

> A Willa Vie Residences CEO Petterson told The **Mirror**: "There are so many inaccurate reports about Jenny Phenix when in fact she herself cancelled all while being on a trip in the Canary Islands fully paid for by VVR.

---

[3] "The Mirror" refers to a British national daily tabloid newspaper.

> "She didn't just complain in the chats but created a very hostile and toxic environment amongst residents. After receiving dozens of complaints and multiple cancellations directly related to the mayhem she created, we decided to suspend her contract entirely. This was subsequently voted on by the residents who overwhelmingly decided to uphold her suspension."

115.    The publication referred to Plaintiff by name throughout, was made concerning Plaintiff, and was so understood by those who read the article.

116.    The entire statement is false as it pertains to Plaintiff.

117.    As a proximate result of the above-described publication, Plaintiff has suffered loss of her reputation, shame, mortification, and injury to her feelings, all to her damage in a total amount to be established by proof at trial.

118.    Defendants knew or should have known the false statements about the Plaintiff would be published.

119.    The false statements about Plaintiff caused actual harm to the Plaintiff's reputation, including damage to her personal and professional life.

120.    Defendant's actions were intended to cause Plaintiff's financial and other injury and constituted "fraud" and "malice", thereby entitling Plaintiff to punitive damages, in addition

to actual damages.

## COUNT VII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

121.    Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

122.    Defendants intended to inflict emotional distress upon Plaintiff by, without warning, cancelling the Agreement at the very last minute after Plaintiff had travelled to Belfast to board, refusing boarding and stranding Plaintiff in a foreign country to prevent plaintiff from expressing her concerns about the numerous delays and safety issues as set forth herein.

123.    The emotional distress was intentionally inflicted by the defendants by and thorough their officers, agents, crew, owner, or other entity tied to the vessel.

124.    The intent is further evidenced by the Defendants' subsequent threats to sue Plaintiff for breach of nondisclosure terms when Plaintiff did not enter into any such agreement.

125.    Said conduct was intentional and malicious and done for the sole purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional and physical distress.

126.    As a further proximate result of Defendants' actions and the consequences proximately caused by it, as hereinabove alleged, plaintiff suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body as follows: therapy for the following symptoms: insomnia, severe anxiety, severe stress, severe depression, lack of motivation, nausea, headaches, lack of concentration, shock, PTSD, poor memory, and an inability to make decisions.  And further damages in the sum to be determined at trial based on proof.

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

127.    Plaintiff re-alleges, adopts and incorporates by reference the allegations in the

paragraphs set forth above as though alleged originally herein.

128. In the alternative to Count VII, Defendants by act negligently inflicted emotional distress upon Plaintiff as set forth herein.

129. The emotional distress was inflicted by the ship's captain, crew, owner, or other entity tied to the vessel.

130. Said conduct was negligent and Defendants knew or should have known that it was done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional and physical distress.

131. As a further proximate result of Defendants' actions and the consequences proximately caused by it, as hereinabove alleged, plaintiff suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body as follows: therapy for the following symptoms: insomnia, severe anxiety, severe stress, severe depression, lack of motivation, nausea, headaches, lack of concentration, shock, PTSD, poor memory, and an inability to make decisions.  And further damages in the sum to be determined at trial based on proof.

## COUNT IX – INVASON OF PRIVACY

132. Plaintiff re-alleges, adopts and incorporates by reference the allegations in the paragraphs set forth above as though alleged originally herein.

133. Plaintiff had a reasonable expectation of privacy in the closed WhatsApp group created by the cruise line passengers awaiting to embark.  She had a legitimate belief that her privacy would be respected.

134. The defendant intentionally invaded the plaintiff's privacy by not only eliciting private communications from the closed WhatsApp group but then broadcasting the information

in the public and to the press, including disseminating false and misleading information about the circumstances leading up to and then resulting in the canceling of Plaintiff's agreement thereby placing the plaintiff in a false light in the public eye.

135.    Sharing private conversations from messaging apps without consent is illegal under the Ireland's privacy laws and the European Union's General Data Protection Regulation (GDPR) as it amounts to sharing personal data without a lawful basis, breaching the individual's protected right to privacy.   The Defendants' CEO admitted to violating such privacy rights in communications with the Plaintiff:



Moderator  +1

Founder & CEO · 2 days ago

Jenny Phenix I'm sorry Jenny but nothing is ever private on social media. The terms and conditions do extend to the Whatsapp group and everywhere else our residents communicate.

136.    The GDPR mandates that all personal data, including private messages, can only be shared with the specific, informed, and unambiguous consent of the individuals involved.

137.    The sharing and then use of Plaintiff's private messages by VILLA VIE GROUP without her consent was unlawful.

138.    In the totality of the circumstances, the intrusions were highly offensive to a reasonable person.

139.    The intrusions involved a private matter of the Plaintiff.

140.    The intrusion caused the Plaintiff emotional anguish, anxiety and suffering.

**WHEREFORE**, Plaintiff, **JENNY PHENIX**, requests the following relief against the Defendants, VILLA VIE GROUP:

A.    Plaintiff be awarded the sum of $196,072 for her actual damages.

B.    The transactions between Plaintiff and Defendants be declared void and Plaintiff be awarded all sums paid to Defendants, including but not limited to principal, interest, and fees for each and every transaction.

C.    Pursuant to her common law claims for fraud, deceit, and misrepresentation, Plaintiff be awarded such actual damages as she may prove at trial, plus emotional and punitive damages.

D.    Pursuant to applicable Consumer Fraud and Business Deception causes of action, Plaintiff receive triple her damages, legal fees and costs.

E.    Plaintiff be awarded pre-judgment and post-judgment interest.

F.    Plaintiff be granted trial by jury for any cause for which she is so entitled.

G.    Plaintiff recover her costs, as well as attorney fees.

H.    Plaintiff be granted any other relief to which she may be entitled. a trial by jury and any such other relief to which the Plaintiff may be justly entitled.

Dated: March 27, 2025

Gellert Seitz Busenkell & Brown LLC
1202 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302)


BY:  /s/ Gary F. Seitz
      Gary Seitz
      DE Bar # 4457

# EXHIBIT A



# VOYAGER RESERVATION CONTRACT

This Voyager Reservation Contract is issued by Villa Vie Residences Incorporated (VVRI) a company incorporated in the State of Delaware, USA whose registered office is located at # 700 -3422 Old Capital Trail, PMB 1461 Wilmington, DE 19808.

Whereby, VVRI wishes to sell, and the Voyager(s) wishes to occupy, a Villa on board VVRI Ship #1 with projected departure date of May 14, 2024 under the following terms & conditions:

| **VOYAGER DETAILS:** | | |
|---|---|---|
| **Voyager #1:** | ___Jenny Phenix ___ | ___ 1261 Gondola Ct, Boynton Beach, FL, 33426, United States ___ |
| | (Full Name) | (Address) |

For the VVRI Circumnavigation #1(CN #1) Departing from England, UK, (Itinerary as attached below)

Founders Club Membership          **None**

Voyager Occupancy Status          **Single**

Villa Type          **Inside**

## VOYAGER CN#1 SEGMENT COMMITMENT

Voyager would like to purchase: __ **1289 days** __ to include the following Segments on CN#1

**Select all, 1- Northern Europe, 2- Greenland, Canada, New England, 3- Caribbean, 4- South America, 5- North America, 6- Japan, Philippine Sea, 7- South Pacific, 8- Australia/New Zealand, 9- North Asia, 10- South Asia, 11- Villa Vie on Land (Singapore, Dry Dock), 12- India, Sri Lanka, Malaysia, 13- Middle East, Indian Ocean, 14- Indian Ocean, Madagascar, 15- Africa, 16- South Europe, Mediterranean, 17- Transatlantic Crossing**

- Residence Fees Total:   $231,578
- FC Membership level discount applied:   0%
- SOLO discount:   30%
- Total Discount Amount:   $68,833

---

TOTAL VOYAGER FEES:   $162,745   (Including all applicable discounts)
TOTAL DEPOSIT DUE:   $16,275   (10% OF TOTAL VOYAGER FEES)
DEPOSIT DUE DATE:   December 5, 2023 8:29 PM
FIRST SEGMENT FEES DUE DATE:   90 days before departure

This document is signed using GetAccept Digital Signature Technology.
Fingerprint: f51b13ee421a56197799b21cef17c4b215b212e6b14298e8b3a204a863cd6f9b63dba98b558b91eebe5dea2504cd959bc67f85ac5947f6e275b99cd85c2634d6

In consideration of the receipt of the cruise fare and/or boarding and lodging on the vessel, the booking of the circumnavigation and travel on VVRI Ship #1 are subject to the following terms and conditions:

## 1. DEFINITIONS

1. "Agreement" or "Contract" means the terms and conditions set forth in this Voyager Contract together with the Villa Fees Fare, owed for your voyage. Together, the items described in the preceding sentence shall constitute an agreement between the Voyager and Villa Vie Residences Incorporated as operator of the vessel.

2. "VVRI" shall mean and include Ship #1 (the Vessel), and all its owners, operators, employees, agents, charterers, and water tenders. The term "Voyager" shall include the plural where appropriate and means all persons or entities booking or purchasing passage and/or traveling under this Contract, including heirs, representatives, and any accompanying minors. "Voyager" shall have the same meaning as "Passenger" in this Contract. "Voyager" or "You" or ""Your" includes all persons traveling under this circumnavigation Contract, along with their respective heirs and representatives. Any Voyager under the age of 18 must be identified to VVRI at the time of booking and must be accompanied by an adult on the circumnavigation at all times. The adult who agrees to this contract also does so on behalf of any minor travelling with the adult and who is not competent to contract.

3. "Circumnavigation" includes the specific circumnavigation covered by this Contract, as the same may be modified and shall include those periods in which the Voyager has embarked or debarked the Vessel and while the Voyager is on land while the Vessel is in port or at anchor.

4. "Fare" means the Cruise fare that is due for this Circumnavigation including such amounts that are still owed and/or have been paid by the Voyager, but does not include the amounts due for other services such as air transportation, photographs, telephone calls, medical services beyond those that are included in the Fare, spirits, additional or upgraded wine, beer, or soft drinks beyond those included at meal times, shore excursions, salon and spa services, optional additional gratuities, or any other incidental charge or expense, nor does it include any security surcharges or similar assessments made by airlines, trains, buses, hotels, or other third parties which may be due and payable by Passenger upon request. All fares are quoted in U.S. Dollars and are based on occupancy type as described on page 2 of this contract. A Service Charge will be automatically added to optional purchases for beverages, specialty dining or events when available, and other voluntary purchases during the circumnavigation. If you choose to provide additional compensation directly to a crew member, you may do so at your own discretion.

5. The Voyager Reservation Contract shall be deemed to be an acceptance by Voyager, on behalf of themselves and all other persons traveling under this Contract, and his and their heirs and representatives, that he and they accept and agree to all the terms and conditions herein. This ticket and subsequent embarkation on the Vessel is valid only for the person(s) named as Voyagers and any represented minors, and cannot be transferred or modified without the written consent of VVRI.

6. "Vessel" means a ship operated, chartered, or provided by VVRI on which the Voyager will embark, or against which the Voyager may have a claim as well as any substituted ship used in performance of this ticket.  "Master" includes the captain or delegated subordinates on any Vessel provided by VVRI on which the Voyager is travelling.

7. "Deposit" means 10% of the total value of this contract will be held in Villa Vie Residences group of companies Villa Vie Residences Corporation Escrow a company with registered address 12266 NW 10 Street Pembroke Pines, FL 33026 herein referred to as "Escrow". The Escrow account is held at Capital One PO Box 9035 Melville, NY 11747-9035. The Escrow account is used as the Trust account on behalf of its sister company Villa Vie Residences Incorporated "VVRI". VVRI has a deposit Trust policy in place directly with Villa Vie Residences Corporation Escrow.

8. "Pay as you go" means Voyagers pay the remaining balance 90 days in advance of each segment start date.

## 2. DEPOSIT AND PAYMENT POLICY

1. Your deposit amount required to book a villa will be provided to you at the time of booking. Bookings made within 90 days of sailing are required to be paid for in full. **Bookings made for more than 91 days of sailing are required to pay a 10% deposit at the time of booking and the remaining amount will be due and payable 90 days prior to each segment start date reserved under deposit. Bookings not paid as per this schedule will automatically be canceled and the deposit amount forfeited.** This includes all "pay as you go" voyagers. Unless otherwise noted, final payment must be received by VVRI no later than 90 days prior to circumnavigation segment departures. VVRI reserves the right to cancel any booking not fully paid at the time of final payment. Passport details and special onboard service requests are due at final payment. Payments may be made by wire transfer, or ACH. Fees for all wire transfers and ACH transfers have zero service charges. VVRI accepts no responsibility for foreign currency/transaction processing fees independently assessed by issuing banks. None of these fees separately charged by the issuing banks accrues to the benefit of VVRI. Any wire transfer fees incurred by VVRI for refund requests will be deducted from the refunded amount.

2. All deposits held in Escrow account until such time as the deposit transfers to VVRI as fees due and payable.

3. There will be a discount applied for single occupancy cruise fare.

4. All occupants are charged $33/day if staying in the Voyager's villa.

## 3. CHILDREN, INFANTS AND UNACCOMPANIED MINORS

Any Voyager under the age of 18 must be accompanied by and occupy the same stateroom as an adult 18 years or older. VVRI does not provide for the care, entertainment, or supervision of children. The recommended age for children living onboard is 16. Pregnant women who will be visiting voyagers must not be more than 6 months pregnant at the time of the visit.

## 4. VOYAGER ETIQUETTE AND CONSIDERATION

1. VVRI, its Masters, General Managers, Chief Pursers, or any other deputized figures of authority on board the Vessel reserve the right, at their sole discretion, to disembark any Voyager, in any port of call, for any reason, should they be considered a nuisance to or danger to voyagers, staff or otherwise hinder or threaten the safe and secure operation of the Vessel or any associated land programs. Any voyager(s) disembarked from the Vessel or associated land programs are solely responsible for any costs incurred with repatriation. The full cruise fare will be considered earned and retained and no refunds or reimbursements will be given.

2. VVRI may deny boarding to any persons convicted of certain felonies, which include but are not limited to aggravated assault (including domestic violence), murder, robbery, sexual assault, and other felony sexual offenses. VVRI reserves the right to access public records containing information about any felonious convictions as part of its Voyager screening, and to cancel a booking and/or deny embarkation at any time to any individual who has been convicted of any of the listed crimes. Voyager hereby consents to VVRI accessing public records concerning Voyager regarding felonious conviction/s as part of its screening policy. In the event of such cancellation or denial, the affected individual's sole remedy shall be a refund of the amount paid to VVRI for that individual's own booking, without entitlement to any further damages, loss, expenses, credit, or compensation whatsoever. Any Voyager traveling with the person who is denied boarding shall be unaffected and cancellation by any of these other Voyagers is subject to the standard cancellation policies.

## 5. RESERVATION MODIFICATIONS

Changes to a reservation after deposit and prior to issuance of travel documents may result in the assessment of administrative fees and service charges beyond the control of VVRI. Administrative fees and service charges will vary and are based on the type of change to your circumnavigation departure, itinerary, hotel or land package, or air supplement. Voyagers are responsible for any additional costs incurred as a result of these changes and Bookings cannot be converted from circumnavigation only to air/sea within thirty (30) days of sailing. Some changes, including name changes, may also be considered cancellations, and applicable fees will be assessed. Any changes to a reservation that result in the imposition of airline or other cancellation fees are the

responsibility of Voyager. No refund will be made for unused or partially used portions of the circumnavigation segments, air or land programs, including shore excursions, except as specifically outlined in the Voyager Reservation Contract.

## 6. PUBLIC HEALTH

1. VVRI follows the guidance and directives of established health authorities in the U.S. and other destinations where the Vessel visits, including the CDC and other international, national, and local health agencies when the Vessel is within those agencies' jurisdiction. Voyager acknowledges that these directives may change from time to time and that VVRI's COVID-19 Policies and Procedures may therefore change. Voyager expressly agrees to comply not only with the COVID- 19 Policies and Procedures as they are described herein but also as they are set forth on Villa Vie Residences Incorporated brand website at www.villavieresidences.com, at all times including pre-embarkation, while onboard, during port calls and shore excursions and/ or final disembarkation. In case of any conflict between the COVID-19 Policies and Procedures described herein or on the Villa Vie Residences Incorporated brand website, website shall govern. Voyagers must abide by VVRI's COVID-19 Policies and Procedures.

2. VVRI highly recommends that Voyagers consult with a personal physician prior to embarkation and review the U.S. Centers for Disease Control ("CDC") website for updated information. The CDC has identified elderly persons and persons with certain chronic medical conditions as being at increased risk of life-threatening complications from being infected with COVID-19. Voyagers may be exposed to communicable illnesses, including but not limited to influenza, COVID-19, colds, and norovirus while onboard the Vessel as well as traveling to/from the Vessel, during shore excursions, in terminals, and during activities. Voyager accepts that exposure to communicable illnesses and other diseases is inherent in activities where individuals interact or share common facilities and is beyond the control of VVRI. Under this circumnavigation Contract, Voyager knowingly and voluntarily accepts these risks including the risk of serious illness or death resulting from such exposure, and/or all related damages, costs, expenses, and losses of any nature whatsoever.

3. Upon embarkation and at any time during the circumnavigation, VVRI may require that Voyagers provide a truthful and complete health questionnaire containing any and all health or travel-related questions required by VVRI in its sole discretion. VVRI may perform routine or periodic testing and temperature checks of each Voyager. VVRI reserves the right at any time to modify capacity rules for activities (including but not limited to restaurants, gyms, entertainment events, and shore excursions) in the event it determines that normal capacities may present unsafe exposure to Voyagers. If required to prevent illnesses onboard, VVRI may require the mandatory use by each Voyager (except where a medical exemption is provided by the onboard Doctor), of face coverings in public locations outside of the Voyager's villa, during embarkation, disembarkation, and shore excursions. VVRI also retains the right to confine a Voyager to their Villa if they have been determined to be carrying a communicable disease or provide emergency disembarkation of the Voyager if, in VVRI's sole discretion, such steps are necessary to prevent or slow the spread of COVID-19.

4. Any noncompliance by the Voyager or Voyager's traveling party with VVRI's COVID-19 Policies and Procedures or this Ticket Contract shall be grounds for refusal to embark, or re-embark after going ashore, quarantine onboard the Vessel, reporting to government or health authorities, disembarkation, or other steps that are determined to be necessary in VVRI's sole discretion under the applicable circumstances, to protect the wellbeing and health of others. Under these circumstances, Voyager shall not be entitled to a refund or entitled to compensation of any kind. Voyager will be responsible for all related fines and costs, including without limitation, travel expenses and for necessary travel documentation required by any port, or for departure from or arrival to the Voyager's country of residence. In no event, will VVRI be liable for any damages or expenses whatsoever incurred by any Voyager, as a result of VVRI's decision to refuse reboarding, quarantine, disembarkation, or any other decisions taken by VVRI.

5. If a Voyager tests positive for COVID-19, influenza, or any other communicable disease while onboard, VVRI, in its sole discretion may require the Voyager to be quarantined in their villa and may refuse disembarkation in any port to such Voyager to prevent the spread of any communicable illness. If it is deemed necessary to disembark the Voyager due to a COVID- 19 infection that requires onshore medical treatment, and the Voyager is unable to reboard the Vessel within 30 days, then the Voyager will be entitled to a refund only for the unused portion of the circumnavigation. Any expenses incurred by the Voyager including related costs, fines, and travel expenses are the sole responsibility of the Voyager and under no circumstances will be the responsibility of VVRI.

# 7. MEDICAL SERVICES

1. Each Vessel is equipped with limited medical facilities and staffed by internationally accredited medical personnel who are independent contractors as VVRI is not a medical provider. Any interactions with medical providers in port or onboard are done so at the sole risk and cost (beyond standard medical visits) of the Voyager and provided for the convenience of the Voyager, work directly for the Voyager, and are not acting under the supervision or control of VVRI. Although standard medical visits and customary Emergency Room fees, medications, procedures, and charges may apply for medical services and are dictated by the services performed by the medical staff. Voyager acknowledges that medical care and medical evacuation may not always be available in port or while at sea. VVRI assumes no liability for treatment, failure to treat, misdiagnoses, diagnosis, any alleged or actual malpractice, examinations, advice, or other services provided by the medical staff, and any additional expenses to you incurred by such services. Complimentary medical visits include standard visits necessary if the Voyager is feeling unwell or has been injured. Routine care or necessary ongoing medical visits beyond the standard visits will be charged an additional fee. VVRI recommends that Voyager obtain independent medical insurance.

2. Voyagers needing special services during the voyage, or needing to travel with any medical apparatus, including wheelchairs, motorized scooters, etc., must advise VVRI in writing at the time of deposit. Please note some ports of call may not be suitable for Voyagers with limited mobility and in such cases, may preclude debarkation for any individual with limited mobility, with or without the aid of a wheelchair or motorized scooter. VVRI has the right to refuse or revoke passage to anyone who, in its judgment, is in a physical, mental, or emotional condition unfit for travel or whose comfort on board may be compromised due to situations beyond the care that can be provided by VVRI. VVRI does not offer medical insurance and any medical procedures or medications required in addition to the standard health visit will be at cost.

# 8. NOTICE TO BOARD

If Voyagers disembark for more than 2 weeks, voyagers must notify Voyager services at least 2 weeks prior to rejoining the vessel. If a shorter disembarkation or embarkation period becomes required, VVRI will make all efforts to accommodate the request but it is not guaranteed.

# 9. FRIENDS & FAMILY

Friends & Family space is limited onboard and must be planned and approved by Voyager Services at least 2 weeks ahead of arrival. Friends & Family rate of $33 per day per person will be charged to the Stateroom prior to embarkation. Other Friends & Family Villas are available on a first come first served basis and are charged a daily rate depending on Villa type. All Voyagers accrue 1 week of free Friends & Family time inside a Voyager's Villa, for every 3 months of paid Villa fees, paid in full by the Voyager.

# 10. DEVIATION, CANCELLATION, AND REFUND

1. VVRI may change the itinerary at any time without notice and or delay the inaugural sail date. If the inaugural sail date is delayed by more than 60 days, then VVRI will refund the full Fare that has been paid. The Vessel shall be entitled to leave and enter ports at the Master's discretion and for any purpose and to omit or change any or all ports of call, arrival or departure times, with or without notice, for any reason whatsoever, including but not limited to health and safety, security, adverse weather, hurricanes, tornadoes, strikes, tides, hostilities, civil unrest, port closings, emergency debarkations of Voyagers or crew, late air, sea, car or motor coach departures or arrivals, mechanical breakdowns, declared pandemics, public health emergencies, outbreak of communicable disease, quarantines, national or regional emergencies, US or foreign governmental advisories or travel warnings, all such deviations being considered as forming part of and included in the proposed voyage.

2. If the circumnavigation is canceled by VVRI for any reason, VVRI shall thereupon return to the Voyager, if the Contract is completely canceled, a full refund of the circumnavigation Fare or, if the Contract is partially canceled, a proportionate part thereof. Under such circumstances, VVRI shall have no further liability for damages or compensation of any kind. In the event a voyage is terminated early due or canceled to mechanical failure of the Vessel, Voyager is entitled to their circumnavigation Fare, or a proportionate share thereof, in addition to transportation to the Vessel's next scheduled port of disembarkation or

This document is signed using GetAccept Digital Signature Technology.
Fingerprint: f51b13ee421a56197799b21cef17c4b215b212e6b14298e8b3a204a863cd6f9b63dba98b558b91eebe5dea2504cd959bc67f85ac5947f6e275b99cd85c2634d6

Voyager's home city, at VVRI's discretion and expense, as well as necessary lodging at the unscheduled port of disembarkation, if required, at VVRI's expense.

3. In the event a voyage is terminated early or canceled due to mechanical failure of the Vessel and a replacement vessel is not provided, Voyager is entitled to their circumnavigation Fare (if canceled prior to the first day of the voyage), or a proportionate share thereof, in addition to transportation to the Vessel's scheduled port of disembarkation or Voyager's home city, at VVRI's discretion and expense, as well as necessary lodging at the unscheduled port of disembarkation, if required, at VVRI's expense.

4. The Vessel may deviate from its scheduled course to assist other vessels for the purposes of saving life or property without liability whatsoever to Voyager.

5. All cancellations requested by Voyagers must be in writing and received by VVRI no later than the day before cancellation penalties are to be assessed. Fare is defined as the full cost of any circumnavigation or air component purchased from VVRI, excluding optional facilities and services fees.

The following cancellation charges will be assessed for all written cancellations received up to the scheduled time of departure.

**PRE-SHIP DISCLAIMER: ALL CONTRACTS SIGNED BEFORE VVRI PROCURES IT'S FIRST VESSEL WILL HAVE  10 BUSINESS DAYS FROM RECEIVING NOTICE FROM VVRI OF THE VESSEL DETAILS TO CONFIRM ACCEPTANCE OR CANCELLATION OF THEIR CONTRACT IN WRITING.**

Voyagers who wish to cancel their reservation prior to embarkation on the Vessel, may do so in writing to VVRI and will be subject to the following cancellation charges:

**POST-SHIP CANCELLATION POLICY (The dates below are only relevant post ship procurement notice).**

- 181 Days prior to the first day of the segment 100% refundable.
- 91 Days to 180 Days - 50% of deposit for segment refundable.
- 90 Days or Less – Deposit on segment is nonrefundable.

 I have read and agree to the cancellation policy outlined above.

## 11. VESSEL

VVRI retains the right to make changes/retrofits/modifications to the vessel provided for its voyages at any time. If the vessel is upgraded prior to the voyage departure and a voyager wishes to cancel as a result, the Cancellation Policy listed within the Voyager Reservation Contract will remain in full force and effect. Although VVRI makes best efforts to ensure that all its vessels are seaworthy at all times, the company does not warrant (expressly or impliedly), and specifically disclaims any warranty as to the fitness, condition, or merchantability of VVRI's Vessels. As part of VVRI's Performance and Indemnity Insurance requirements all vessels once acquired will carry its own policy which includes but not limited to:  hull and machinery, open-ended risks, war risks; and risks of environmental damage such as oil spills and pollution.

## 12. RESPONSIBILITY AND COMPLIANCE

1. Voyagers specifically release VVRI from all claims for loss or damage to baggage or property or from personal injuries or death, or from loss or delay arising out of the acts, omissions, or negligence of any independent contractors, such as air carriers, hotels, shore excursion operations, restaurateurs, transportation providers, medical personnel, spa personnel, or other providers of services or facilities onboard the Vessel or onshore at any port of call. All arrangements made with independent contractors are made solely for the convenience of voyagers and are done at the voyagers' own risk. VVRI specifically disclaims all liabilities for damages for emotional distress, mental suffering, or psychological injury of any kind.

Tickets, vouchers, and any other travel documents are subject to all terms and conditions of the respective suppliers, some of which may limit a supplier's liability.

2. Voyagers shall always comply with the provisions of this Agreement, with all applicable laws, and with all VVRI's policies, procedures, and requirements (which may be changed from time to time without notice). While onboard, Voyagers may not enter any designated crew areas, including any crew quarters, under any circumstances. Additionally, Voyagers may not sell, advertise, or promote any products or services to other Voyagers onboard any of VVRI's Vessels. Any Voyagers who wish to provide a service must be approved by VVRI, and carry their own liability insurance, and a separate agreement and waiver will apply.

3. VVRI retains the right to enter any Voyager room even when the "Do Not Disturb" sign is out for any required emergency maintenance, safety, or security. Where there is not an emergency, VVRI will make an attempt to schedule a time that is acceptable to both the Voyager and the VVRI maintenance team.

4. Except as otherwise expressly provided herein, VVRI shall not be liable for any injury, death, illness, damage, delay or other loss to person or property, or any other claim by any voyager caused by an act of god, war, terrorism, civil commotion, labor trouble, government interference, perils of the sea, fire, orders by government agencies restricting travel due to declared pandemics, public health emergencies or outbreaks of communicable disease, covid-19, influenza, colds and norovirus, quarantines, national or regional emergencies, thefts or any other cause beyond carrier's reasonable control, or any act not shown to be caused by VVRI's negligence.

5. Voyager agrees to solely assume the risk of injury, death, illness, or other loss, and VVRI is not responsible for the voyager's use of any athletic or recreational equipment; or for the negligence or wrongdoing of any independent contractors, including but not limited to photographers, spa personnel or entertainers; or for events taking place off VVRI's vessels, launches, tenders, or transports, or as part of any shore excursion, tour or activity.

6. VVRI hereby disclaims all liability to the voyager for damages for emotional distress, mental suffering, or psychological injury of any kind under any circumstances, when such damages were neither the result of a physical injury to the voyager, nor the result of the voyager having been at actual risk of physical injury, nor were intentionally inflicted by VVRI. Without limiting the preceding sentence, in no event will VVRI be liable to the voyager for any consequential, incidental, exemplary, or punitive damages.

7. Passengers embarking the circumnavigation in a European member state port are afforded rights under EU regulation 1177/2010. For a copy of EURegulation392/2009, visit https://eurlex.europa.eu/legalcontent/en/txt/pdf/?uri=celex:32009r0392&from=en. For a copy of the Athens convention and the 2002 protocol thereto, Visit https://treaties.un.org/doc/publication/unts/volume%201463/volume- 1463-i-24817- english.pdf and https://treaties.un.org/doc/publication/unts/no%20volume/24817/a-24817 080000028053bf55.pdf (full text in English begins at page 40).

As to all other Circumnavigations not described above, all the restrictions, exemptions from, and limitations of liability provided in, or authorized by the laws of the United States shall apply, including but not limited to, title 46 of the United States code §§30501 through 30509, and 30511.

8. Except as otherwise expressly set forth herein, this ticket contract and all disputes or claims whatsoever by voyager arising from or related to this ticket contract shall in all respects and without regard to conflict of law principles, be governed by and construed in accordance with the general maritime law of the United States of America, and, when applicable, the U.S. Death on the High Seas Act (46 U.S.C. § 30301 et seq.). Except as otherwise expressly specified in this ticket, the voyager agrees this choice of law supersedes and preempts any provision of law of any other state or nation.

9. No suit shall be maintainable against VVRI or the Vessel upon any claim relating to the damage or loss to any property unless the Voyager provides a written notice of the claim, with full details, which shall be delivered to VVRI at its Villa Vie Residences Incorporated registered office at the address on page 1 of this contract within thirty (30) days after the termination of the voyage to which this circumnavigation Contract relates or during the circumnavigation onboard to the general manager's attention and acknowledgment of receipt has been received by the voyager from the onboard representative; and in no event shall any suit for any cause against VVRI or the vessel with respect to loss of or damage to property be maintainable

unless suit shall be filed within one year after the termination of the voyage and process has been served within one hundred twenty days after filing, notwithstanding any provision of law of any state, territory, possession or country to the contrary.

10. It is agreed by and between Voyager and carrier that all claims, disputes, and matters whatsoever arising under, arising out of, or relating to this circumnavigation contract shall be litigated in and before a court of competent jurisdiction located in Wilmington Delaware, U.S.A. This circumnavigation contract provides for the exclusive resolution of disputes through individual legal action on the voyager's own behalf instead of through any class action. Even if the applicable law provides otherwise, Voyager agrees that any lawsuit against the carrier whatsoever shall be litigated by Voyager individually and not as a member of any class or as part of a class action, and Voyager expressly agrees to waive any law entitling Voyager to participate in a class action.

11. Either party shall hold the other harmless against any and all claims, demands, damages, liabilities, and costs incurred which directly or indirectly result from, or arise in connection with, any negligent act or omission, pertaining to its activities and obligations under this Agreement. All protections, benefits, defenses, and exclusions from and limitations of liability in favor of VVRI set forth in this circumnavigation contract shall also ensure the benefit of all of VVRI Circumnavigations subsidiaries and affiliated or related companies. including but not limited to VVRI agents or managers, contractors, and suppliers of goods and services, including but not limited to concessionaires, medical staff, all shore excursion and/or tour operators, and independent contractors.

## 13. INSURANCE

Personal medical insurance is not included in your reservation fees, but highly recommended and the sole responsibility of the Voyager(s). VVRI is required to remain in good standing on all necessary insurance policies to maintain the operating status of our vessel. No refund will be made for unused or partially used portions of the circumnavigation, air, or land programs, including shore excursions, except as specifically outlined in Section 11.

## 14. INDEPENDENT TRAVEL ARRANGEMENTS

VVRI has no responsibility regarding air or land travel arrangements made by non-refundable, restricted travel or frequent flyer tickets. This exclusion of liability includes consequences to independently arranged air or land travel that may result from last-minute changes in the embarkation or debarkation ports and delays in arrival at any airport or port location.

## 15. BAGGAGE POLICY

Luggage for VVRI's voyagers must be handled pursuant to regulations and tariffs of airlines, government security requirements, and ground operators. Luggage exceeding these limitations will be subject to charges as set forth by the individual operators, including any excess baggage charges. Fees for checked luggage are now common and are the responsibility of the Voyager. Please check with your specific airline(s) for their respective luggage policy. VVRI reserves the right to refuse any items that may be considered dangerous (explosives, firearms, liquid oxygen, combustible, or illegal items). VVRI reserves the right to search any baggage for security reasons. All hand-carried luggage and personal effects are the responsibility of the voyager at all times. VVRI is not responsible for the loss of or damage to Voyagers' luggage. Baggage insurance is recommended. Luggage and personal belongings will be taken off the vessel upon Voyager debarkation. Under no circumstances will luggage be kept on board without the owner of such luggage being on the vessel after the completion of the 3-year circumnavigation. Voyagers may bring a reasonable amount of luggage on board a VVRI vessel. No baggage or items heavier than 70 lbs each will be loaded onto or off-loaded from our vessels.

## 16. Logistics pickup and delivery of personal belongings for onboard use:

Logistics services will be provided at cost to each Voyager whose full payment has been received and delivery is tentatively scheduled for May 14, 2024. Courier services will pick up/drop off door-to-door (or nearest location) and transfer to the vessel for embarkation. Voyager belongings will be shipped through ground transportation and may take up to 2 weeks from pick-up. Do not pack more than the size of a double-standard closet. Details and pricing will be confirmed in due course. VVRI is not responsible

for the storage of items that cannot fit within your Villa. Please only bring items that you absolutely need and that will fit within your Villa.

## 17. STORAGE

The Vessel has a limited amount of storage space for bulky recreational equipment at a cost to be determined on a first come first served basis. Voyagers who wish to store such items must notify VVRI prior to boarding and receive approval which shall not be unreasonably withheld. There will not be storage space for personal items, motorized or other vehicles, other equipment, instruments, or any personal items of residence. Any such items should be stored in your Villa. Accessories should be foldable to allow for space within the Villa.

## 18. DOCUMENTATION AND VISAS

Passport and Visa requirements and regulations regarding vaccination certificates and other health requirements vary by destination. It is the sole responsibility of each Voyager to obtain and have available the appropriate valid travel and health documents for their chosen itinerary. Any Voyager traveling without the proper documentation will not be allowed to board the vessel and no refund of reservation fare or any other travel components purchased from VVRI will be issued. Passports must be valid throughout the duration of the Circumnavigation plus three months following the date of the trip completion. Voyagers of residence must have passports valid for 3 months following their disembarkation date. VVRI accepts no responsibility for obtaining required visas nor for advising voyagers of visas or other immigration requirements beyond the guidelines indicated.

 I have read, understood, and agree to the Passport, Visa, and Health Requirements as detailed above.

## 19. ATTIRE

Recommended onboard attire is resort or country club casual. For evening dining, elegant casual resort wear is suggested. VVRI does not provide clothing for colder weather.

## 20. BOARDING

Voyagers are required to be on board the vessel at least one hour prior to the scheduled departure time. Should the (in)actions of any Voyager(s) result in the vessel not sailing at its scheduled departure time, VVRI shall assess Late Departure Fees beginning at $1,000 USD per Voyager, to said Voyager(s) directly responsible for any departure that is delayed more than 15 minutes beyond the scheduled and published departure time, to cover the costs levied against VVRI by port authorities, governmental and quasi-governmental agencies as agreed and liquidated damages. If you miss the vessel VVRI is not responsible for the travel arrangements to board in the next port.

## 21. SMOKING

For the safety and security of all Voyagers and staff on board, Designated Smoking Areas are available onboard VVRI vessels. Smoking is expressly forbidden in all staterooms and suites, on verandas, or in any areas of the vessel other than officially Designated Smoking Areas. Smoking in a stateroom or suite or on a veranda represents a serious fire and safety hazard to all Voyagers and staff. Voyagers choosing to disregard this policy will be disembarked at the next port of call and may also be subject to additional fees that will be imposed to cover the costs associated with any damage to and the required cleaning of furnishings, verandas, and surrounding deck, and accommodation areas. All areas other than those specified as Designated Smoking Areas will remain smoke-free. This includes all voyager suites and staterooms, verandas, restaurants, public areas, the Casino (if offered), and all other areas of the vessel. Voyagers are welcome to use Cigars, Pipe smoking, and Electronic Cigarettes in designated areas.

## 22. GRATUITIES

How much you choose to tip is a personal matter and completely at your discretion. For your convenience, an 18% service gratuity is automatically added to all beverage purchases and spa services. Naturally, Voyagers may decide on additional gratuities while onboard the vessel at their sole discretion.

## 23. TRANSFER CLAUSE – TRANSFER VILLA TO SOMEONE ELSE

1. VVRI does not offer refunds for any reason a Voyager cannot complete the trip. The purchase is transferable, and the Voyager wanting to transfer rights to the villa may do so by calling VVRI Customer Service.  Customer Service will only assist with the transfer/name change. It is the sole responsibility of the purchaser to reassign or resell.

2. A two-week notice must be provided to embark any Voyager to meet international manifest requirements. Any Voyagers not on the manifest will not be allowed to board.

3. Additional Voyagers – Additional Voyagers are defined as any voyagers over the paid-for designated occupancy type of the Villa. There can be up to 4 people (including those listed in this contract) in a Villa for no more than 30 days. Port charges and gratuities per person are $33/day. Friends & Family villas are also available on a limited basis at a cost of $33/day on a first come first served basis. Additional Voyager Villas are available on a limited basis on a first come first serve and will be charged depending on the villa type.

## 24. PET POLICY

1. A maximum of 15 cats per vessel and a maximum limit of two cats per Villa will be permitted with a $1000 deposit for each cat, half of which is refundable if no damages to the Villa or any of its components have been incurred and will be subject to additional charges should the damages be more than the deposit amount. All cats will be confined to the Villa and are not permitted in any public spaces. VVRI reserves the right to limit the number of cats on the vessel and space is on a first come first serve basis.

2. Cat litter must be disposed of properly in a bag as part of the Villa trash and must be changed no less than every other day unless needed more frequently. Under no circumstances should any cat litter be flushed down the toilet, in the sink, or bathtub, and is subject to a $10,000 fine if litter has been found to be flushed. A pet addendum will be provided separately.

3. VVRI Vessel may accommodate up to 10 dogs under 30lbs under its "Dog Vacation Program" and will be detailed under a separate "Dog Vacation" contract, if Ship #1 can accommodate.

## 25. INCLUSIVE AMENITIES

All-inclusive products include dining three times a day at either of the restaurants, snacks and other food offerings to be available throughout the day and evening, limited house beer and house wine at lunch and dinner, onboard entertainment (special events may be at an additional charge), WIFI, weekly housekeeping, laundry service, usage of the public areas of the business center, fitness center, primary health visits, and friends and family visits unless otherwise specified within the Voyager Reservation Contract.

## 26. VILLA AMENITIES

Villas include bathroom toiletries, shampoo/conditioner/shower gel, linens (bed linens and towels), flat screen tv, mini fridge, hair dryer, coffee machine, iron upon request, and underbed storage. Voyagers can buy their own toiletries, food, and beverage items per regulations within each port. No fresh fruits or vegetables may be brought onboard in any port and will be subject to confiscation and disposal without compensation. Any electronics must be inspected, fire proofed, approved and have automatic shut off.

## 27. WHAT TO BUDGET FOR (NON-INCLUSIVE)

VVRI offers salon and spa services, shore excursions, alcoholic beverages and packages, special restaurant events, private classes, and personal training which are not included in the Circumnavigation fare. We will provide a list of pricing within three months of embarkation.

## 28. MAIL

1. VVRI will be providing a Mail Drop Service for letter mail only, free of charge. We will provide a U.S. address to forward your mail.

2. VVRI will provide package delivery options pricing and specifics to be detailed in due course.

3. All mail will be opened and inspected to ensure it is legally able to be mailed. Items such as Aerosols, Alcoholic Beverages, Ammunition, Cigarettes, Dry Ice, Gasoline, Hemp-based products (including cannabidiol [CBD]), Marijuana (medical or otherwise), Nail Polish, Perfumes (containing alcohol), and batteries will not be permitted. A freight forwarder will handle the shipment and deliver it to the nearest port of call.

4. Mail/packages needed urgently can be shipped separately at the Voyager's expense directly to the port agent a few days before arriving at the port. Please discuss with onboard Customer Service to be provided instructions for shipping.

## 29. NOTICE

While VVRI makes every effort to adhere to the specifics shown on the website, circumstances may require otherwise. All information contained herein is subject to change without notice at the discretion of VVRI including all schedules and fares listed. VVRI is not responsible or liable for any typographical errors, omissions, or misprints. Any modifications to the Voyager Reservation Contract will be done via Addendum.

**SPECIAL CONDITIONS:**

5% Deposit is due on or before Dec 30, 2023

Authorized by VVRI Executive

*Jenny Phenix*

**Jenny Phenix**
12/5/2023

*Villa Vie Residences*

**Villa Vie Residences**
Villa Vie Residences INC

Other Voyagers in Villa (Minors) where applicable:

# Signature Certificate

Document name:

**Singles Voyager Contract**

Unique document ID:

**61d8a821-1f2a-47df-8433-32725dea501a**

Document fingerprint:

f51b13ee421a56197799b21cef17c4b215b212e6b14298e8b3a204a863cd6f9b63dba98b558b91eebe5
dea2504cd959bc67f85ac5947f6e275b99cd85c2634d6

## Signatories



### Jenny Phenix

Email: jennypfam@yahoo.com
Device: Chrome 111.0.0.0 on Unknown ChromeOS x86_64
(desktop)
IP number: 108.220.236.75

Trusted timestamp:
2023-12-05 20:55:25 UTC

*Jenny Phenix*



### Villa Vie Residences

Villa Vie Residences INC

Email: contracts@villavieresidences.com
Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7
(desktop)
IP number: 97.96.63.63

Verified with login

Trusted timestamp:
2023-12-05 20:29:13 UTC

*Villa Vie Residences*

This document was completed by all parties on:

**2023-12-05 20:55:25 UTC**

## Accepted consent

By accessing this document I approve that certain personal data will be processed by GetAccept and Villa Vie Residences such as my name,
email as well as unstructured personal data such as IP-address and usage behaviour. For more information - check out our privacy policy



This document is signed using GetAccept Digital Signature Technology.
This Signature Certificate provides all signatures connected to this document and the audit log.

# Audit log

| Trusted timestamp | Event with collected audit data |
|---|---|
| 2023-12-05 20:55:25 UTC | Document was signed by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 111.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-05 20:55:12 UTC | Document was reviewed by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 111.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-05 20:55:04 UTC | Document was verified via partial signature by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 111.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-05 20:55:03 UTC | Document was verified via handwritten signature by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 111.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-05 20:43:32 UTC | Document was opened by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 111.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-05 20:43:29 UTC | Document was verified via consent by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 111.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-05 20:29:36 UTC | Document was sent to Jenny Phenix (jennypfam@yahoo.com)<br>Device: () |
| 2023-12-05 20:29:30 UTC | Document was sealed by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: () |
| 2023-12-05 20:29:13 UTC | Document was signed by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2023-12-05 20:29:13 UTC | Document was verified via handwritten signature by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2023-12-05 20:29:13 UTC | Document was created by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |



This document is signed using GetAccept Digital Signature Technology.
This Signature Certificate provides all signatures connected to this document and the audit log.

# EXHIBIT B



# VOYAGER RENTAL CONTRACT

This Voyager Rental Contract is issued by Villa Vie Residences Incorporated (VVRI) a company incorporated in the State of Delaware, USA whose registered office is located at # 700 -3422 Old Capital Trail, PMB 1461 Wilmington, DE 19808.

Whereby, VVRI wishes to sell, and the Voyager(s) wishes to occupy, a Villa on board VVRI Ship #1 with projected departure date of May 14, 2024 under the following terms & conditions:

| **VOYAGER DETAILS:** | |
|---|---|
| **Voyager #1:** (Full Name) | ___ jenny phenix ___ |
| **Voyager #2:** (Full Name) <br> (*if applicable*) | ___ Jenny Phenix ___ |
| **Address** | 300 S. Australian Ave, unit 1017 <br><br> West Palm Beach, FL 33401 |

| | |
|---|---|
| Founders Club Membership | **None** |
| Voyager Occupancy Status | **Single** |
| Villa Type | **Inside** |

## VOYAGER SEGMENT COMMITMENT

Voyager would like to purchase: __1155 days__ to include the following Segments on CN#1

## 3- Caribbean, 4- South America, 5- North America, 6- Japan, Philippine Sea, 7- South Pacific, 8- Australia/New Zealand, 9- North Asia, 10- South Asia, 12- India, Sri Lanka, Malaysia, 13- Middle East, Indian Ocean, 14- Indian Ocean, Madagascar, 15- Africa, 16- South Europe, Mediterranean, 17- Transatlantic Crossing

- Residence Fees Total: __$143,913__
- Early Bird discount applied: __0__
- FC Membership level discount applied: __0%__
- SOLO discount: __30%__
- Total Discount Amount: __$61,677__

---

TOTAL VOYAGER FEES:    __$total__ (Including all applicable discounts)
TOTAL DEPOSIT DUE:    __$14,391__
DEPOSIT DUE DATE:    __Immediately__
FIRST SEGMENT FEES DUE DATE: __90 days before departure__

In consideration of the receipt of the cruise fare and/or boarding and lodging on the vessel, the booking of the circumnavigation and travel with VVR are subject to the terms and conditions as detailed on this web page: https://villavieresidences.com/terms-and-conditions/

☑ I have read and agree to the Terms and Conditions as detailed here (https://villavieresidences.com/terms-and-conditions/)

**SPECIAL CONDITIONS:**

5% Deposit is due on or before Dec 31, 2023. Eligible for a one-time $500 on board credit

Authorized by VVR Executive

*Jenny Phenix*

**Jenny Phenix**
12/27/2023

*Villa Vie Residences*

**Villa Vie Residences**
Villa Vie Residences INC

Other Voyagers in Villa (Minors) where applicable:

# Signature Certificate

Document name:

**VVR Rental Agreement**

Unique document ID:

f812a515-853c-419b-9b6d-7f6f01796c3c

Document fingerprint:

2a758fc5e8d57519cf22073906f60f06ed9ff27ff4c5063f2e24ffc04ea0d02d074bad4f014acacbaaf539331
0d882495752a61443aead0c260b9b98cc366e82

## Signatories

 ### Jenny Phenix

Email: jennypfam@yahoo.com
Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64
(desktop)
IP number: 108.220.236.75

Trusted timestamp:
2023-12-27 21:22:54 UTC

 ### Villa Vie Residences

Villa Vie Residences INC

Email: contracts@villavieresidences.com
Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7
(desktop)
IP number: 97.96.63.63

Verified with login

Trusted timestamp:
2023-12-27 00:24:54 UTC

This document was completed by all parties on:

2023-12-27 21:22:54 UTC

## Accepted consent

By accessing this document I approve that certain personal data will be processed by GetAccept and Villa Vie Residences such as my name, email as well as unstructured personal data such as IP-address and usage behaviour. For more information - check out our privacy policy



# Audit log

| Trusted timestamp | Event with collected audit data |
|---|---|
| 2023-12-27 21:22:54 UTC | Document was signed by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-27 21:22:34 UTC | Document was verified via partial signature by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-27 21:22:33 UTC | Document was verified via handwritten signature by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-27 21:19:09 UTC | Document was opened by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-27 16:20:26 UTC | Document was commented by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: ()<br>Comment: Hi Jenny - I updated the contract including price and address. Please review and return if you find everything in order. Thank you so much. Anne |
| 2023-12-27 16:20:25 UTC | Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2023-12-27 16:20:25 UTC | Document was sealed by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2023-12-27 02:46:20 UTC | Document was reviewed by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-27 02:18:53 UTC | Document was opened by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-27 02:18:51 UTC | Document was verified via consent by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 117.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 108.220.236.75 - IP Location: Boynton Beach, United States |
| 2023-12-27 00:25:16 UTC | Document was sent to Jenny Phenix (jennypfam@yahoo.com)<br>Device: () |
| 2023-12-27 00:25:10 UTC | Document was sealed by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: () |



This document is signed using GetAccept Digital Signature Technology.
This Signature Certificate provides all signatures connected to this document and the audit log.

| 2023-12-27 00:24:54 UTC | Document was signed by Villa Vie Residences (contracts@villavieresidences.com) |
| | Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer) |
| | IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2023-12-27 00:24:54 UTC | Document was verified via handwritten signature by Villa Vie Residences (contracts@villavieresidences.com) |
| | Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer) |
| | IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2023-12-27 00:24:54 UTC | Document was created by Villa Vie Residences (contracts@villavieresidences.com) |
| | Device: Chrome 119.0.0.0 on Unknown macOS 10.15.7 (computer) |
| | IP number: 97.96.63.63 - IP Location: Parrish, United States |

✓ GetAccept

This document is signed using GetAccept Digital Signature Technology.
This Signature Certificate provides all signatures connected to this document and the audit log.

# EXHIBIT C



# VOYAGER RENTAL CONTRACT

This Voyager Rental Contract is issued by Villa Vie Residences Incorporated (VVRI) a company incorporated in the State of Delaware, USA whose registered office is located at # 700 -3422 Old Capital Trail, PMB 1461 Wilmington, DE 19808.

Whereby, VVRI wishes to sell, and the Voyager(s) wishes to occupy, a Villa on board VVRI Ship #1 with projected departure date of May 15, 2024 under the following terms & conditions:

| **VOYAGER DETAILS:** | |
|---|---|
| **Voyager #1:** (Full Name) | ___ Jenny Phenix ___ |
| **Voyager #2:** (Full Name) (*if applicable*) | ___ N/A ___ |
| **Address** | ___ 1261 Gondola Ct, Boynton Beach, FL, 33426, United States ___ - |

| | |
|---|---|
| Founders Club Membership | **None** |
| Voyager Occupancy Status | **Single** |
| Villa Type | **Inside** |
| Villa Assigned | **3127** |

**VOYAGER SEGMENT COMMITMENT**

Voyager would like to purchase: __134 days__ to include the following Segments on CN#1

**1-Northern Europe,  2- Greenland,  Canada, New England**

- Residence Fees Total: _____
- Early Bird discount applied: ___0____
- FC Membership level discount applied: ___0%___
- SOLO discount: ___30%___
- Total Discount Amount: _____

TOTAL VOYAGER FEES:   ___$16, 750___ (Including all applicable discounts)
TOTAL DEPOSIT DUE:   ___$16,750___
DEPOSIT DUE DATE:   ___Immediately___
FIRST SEGMENT FEES DUE DATE: ___90 days before departure___

In consideration of the receipt of the cruise fare and/or boarding and lodging on the vessel, the booking of the circumnavigation and travel with VVR are subject to the terms and conditions as detailed on this web page: https://villavieresidences.com/terms-and-conditions/

☑ I have read and agree to the Terms and Conditions as detailed here (https://villavieresidences.com/terms-and-conditions/)

**SPECIAL CONDITIONS:**

Segments Payment is due in full 90 days prior to embarkation.

Authorized by VVR Executive

Jenny Phenix
4/24/2024

**Villa Vie Residences**
Villa Vie Residences INC
4/15/2024

This document is signed using GetAccept Digital Signature Technology.
Fingerprint: 61d70a7a91a4bff8ce6a167a47695cfef892fb801359a1d8d6550886231c1a04ad92d5292210e50c5512edfac3d7d91bff4980c96e30e77f0ea5e9a157ab24fd

Other Voyagers in Villa (Minors) where applicable:

# Signature Certificate

Document name:

**VVR Rental Agreement**

Unique document ID:

fb85626b-e674-4f0c-8f96-b63861caabd5

Document fingerprint:

61d70a7a91a4bff8ce6a167a47695cfef892fb801359a1d8d550886231c1a04ad92d5292210e50c5512e
dfac3d7d91bff4980c96e30e77f0ea5e9a157ab24fd

## Signatories



### Jenny Phenix

Email: jennypfam@yahoo.com
Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64
(desktop)
IP number: 2.59.157.100

Trusted timestamp:
2024-04-24 20:30:09 UTC



### Villa Vie Residences
COO
**Villa Vie Residences INC**

Email: contracts@villavieresidences.com
Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7
(desktop)
IP number:

Verified with login

Trusted timestamp:
2024-04-14 23:41:46 UTC

This document was completed by all parties on:

2024-04-24 20:30:09 UTC

## Accepted consent

By accessing this document I approve that certain personal data will be processed by GetAccept and Villa Vie Residences such as my name, email as well as unstructured personal data such as IP-address and usage behaviour. For more information - check out our privacy policy



# Audit log

| Trusted timestamp | Event with collected audit data |
|---|---|
| 2024-04-24 20:30:09 UTC | Document was signed by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 2.59.157.100 - IP Location: Miami, United States |
| 2024-04-24 20:29:49 UTC | Document was verified via partial signature by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 2.59.157.100 - IP Location: Miami, United States |
| 2024-04-24 20:29:48 UTC | Document was verified via handwritten signature by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 2.59.157.100 - IP Location: Miami, United States |
| 2024-04-24 17:39:21 UTC | Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2024-04-15 00:55:00 UTC | Document was reviewed by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 179.49.53.235 - IP Location: Manta, Ecuador |
| 2024-04-15 00:52:37 UTC | Document was verified via consent by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 179.49.53.235 - IP Location: Manta, Ecuador |
| 2024-04-15 00:52:37 UTC | Document was opened by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 179.49.53.235 - IP Location: Manta, Ecuador |
| 2024-04-15 00:52:34 UTC | Document was verified via consent by Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 122.0.0.0 on Unknown ChromeOS x86_64 (computer)<br>IP number: 179.49.53.235 - IP Location: Manta, Ecuador |
| 2024-04-14 23:42:00 UTC | Document was sent to Jenny Phenix (jennypfam@yahoo.com)<br>Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2024-04-14 23:41:55 UTC | Document was sealed by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2024-04-14 23:41:46 UTC | Document was signed by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer) |
| 2024-04-14 23:41:45 UTC | Document was verified via partial signature by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer) |



This document is signed using GetAccept Digital Signature Technology.
This Signature Certificate provides all signatures connected to this document and the audit log.

| 2024-04-14 23:41:45 UTC | Document was verified via handwritten signature by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer) |
| 2024-04-14 23:39:24 UTC | Document was verified via handwritten signature by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |
| 2024-04-14 23:39:23 UTC | Document was created by Villa Vie Residences (contracts@villavieresidences.com)<br>Device: Chrome 123.0.0.0 on Unknown macOS 10.15.7 (computer)<br>IP number: 97.96.63.63 - IP Location: Parrish, United States |

GetAccept

This document is signed using GetAccept Digital Signature Technology.
This Signature Certificate provides all signatures connected to this document and the audit log.

# EXHIBIT D

# Notice of Termination of Contract

From:   Kathy Villalba (kathy@villavieresidences.com)

To:       jennypfam@yahoo.com

Cc:       mike@villavieresidences.com; anne@villavieresidences.com

Date:    Friday, July 19, 2024 at 10:47 AM GMT+1

---

July 19, 2024

Jenny Phenix
1261 Gondola Ct
Boynton Beach, FL 33426

Subject: Notice of Termination of Contract

Dear Jenny,

We regret to inform you that your contract with Villa Vie Residences has been canceled for the following reasons:

1. **Cancellation of Segments 1 and 2:** Due to your cancellation of these segments, your entire agreement with Villa Vie Residences is considered null and void. We will proceed with refunding the payments made for these segments in accordance with our normal procedures. Since you have not purchased any additional segments, your contract with us is terminated.
2. **Behavior Impacting Community Morale:** We have received over a dozen formal complaints from residents regarding your continuous complaints and negativity. This behavior has significantly impacted the morale and well-being of other passengers. At VVR, we are committed to maintaining a positive and enjoyable environment for all our guests. Given the overwhelming feedback, we must cancel your contract permanently to uphold the well-being and satisfaction of our community.

When we first initiated our operations, the specifics of our offerings were not finalized as we had not yet acquired our vessel. Consequently, the information provided was fluid and subject to change based on the capabilities of the vessel we ultimately purchased. We reserve the right to adjust the scope of our services to align with the capabilities and specifications of our ship.

We greatly value community feedback as it is essential to the foundation and growth of our venture. However, the manner in which feedback is conveyed must be constructive and conducive to the community environment and most importantly respectful. Unfortunately, the way in which your feedback has been presented does not align with these principles.

We appreciate your understanding in this matter. Should you have any questions regarding the refund process, please do not hesitate to contact admin@villavieresidences.com.

Respectfully,

Kathy Villalba
Chief Operating Officer
Villa Vie Residences



**Kathy Villalba**

Founding Partner
Chief Operating Officer
www.villavieresidences.com

## VERIFICATION

JENNY PHENIX, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct. Executed on March 26, 2025 at *West Palm Beach, FL.*

_____ [Signature]
JENNY PHENIX

Galaxy S20 FE 5G

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JENNY PHENIX

**DEFENDANTS**

VILLA VIE RESIDENCES INC, VILLA VIE RESIDENCES CORP, VV ODYSSEY LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gellert Seitz Busenkell & Brown LLC, 1201 N Orange St, Ste 300, Wilmington, DE 19801 215-238-0011

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [x] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | |    28 USC 157 |    3729(a)) |
| [ ] 140 Negotiable Instrument |    Liability   [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &    Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
|    & Enforcement of Judgment |    Slander    Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted |    Liability   [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
|    Student Loans | [ ] 340 Marine    Injury Product | |    New Drug Application | [ ] 470 Racketeer Influenced and |
|    (Excludes Veterans) | [ ] 345 Marine Product    Liability | | [ ] 840 Trademark |    Corrupt Organizations |
| [ ] 153 Recovery of Overpayment |    Liability   **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
|    of Veteran's Benefits | [ ] 350 Motor Vehicle   [ ] 370 Other Fraud | **LABOR** |    Act of 2016 |    (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle   [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract |    Product Liability   [ ] 380 Other Personal |    Act | **SOCIAL SECURITY** |    Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal    Property Damage | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |    Injury   [ ] 385 Property Damage |    Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury -    Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) |    Exchange |
| |    Medical Malpractice | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** |    Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate |    Income Security Act | [ ] 870 Taxes (U.S. Plaintiff |    Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/    Sentence | |    or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability |    Accommodations   [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty | **IMMIGRATION** |    26 USC 7609 |    Act/Review or Appeal of |
| |    Employment   **Other:** | [ ] 462 Naturalization Application | |    Agency Decision |
| | [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| |    Other   [ ] 550 Civil Rights |    Actions | |    State Statutes |
| | [ ] 448 Education   [ ] 555 Prison Condition | | | |
| |   [ ] 560 Civil Detainee - | | | |
| |    Conditions of | | | |
| |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC §1333(1) (admiralty)

Brief description of cause:
Breach of maritime residential passage contract, conversion, consumer fraud and decsptive practices, deceit, misrepresentation, invasion of priva

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   March 27, 2025

SIGNATURE OF ATTORNEY OF RECORD   /s/ Gary F. Seitz

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____