UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| **JENNY PHENIX**, | |
| Plaintiff, | CASE NO.: 1:25-cv-00378-RGA |
| v. | |
| **VILLA VIE RESIDENCES INCORPORATED,** | |
| **VILLA VIE RESIDENCES CORPORATION,** | |
| & | |
| **VV ODYSSEY LLC** | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

Dated: August 11, 2025

GELLERT SEITZ BUSENKELL & BROWN, LLC
  Gary F. Seitz (DE 4457)
  1202 N. Orange Street, Suite 300
  Wilmington, DE 19801
  Telephone: (215) 238-0011
  Facsimile: (302)425-5814
  gseitz@gsbblaw.com

*Counsel to Plaintiff*

**TABLE OF CONTENTS**

I.     BACKGROUND ............................................................................................................... 4
II.    ARGUMENT ................................................................................................................... 5
       A.   Legal Standard .................................................................................................... 5
       B.   Maritime Law Is Supplemented with State Law in Many Situations ............................. 6
       C.   The Complaint Plainly Advises the Defendants with Sufficient Notice of the Claims and Grounds 7
       D.   VVRC and VVO Were All Identified as Parties by Role in the Contract ....................... 7
       E.   The Complaint States a Claim for Breach of Contract ................................................. 8
       F.   The Complaint States a Claim for Promissory Estoppel ............................................. 10
       G.   The Complaint States a Claim for Conversion ........................................................ 11
       H.   The Complaint States a Claim for Unjust Enrichment .............................................. 12
       I.   The Complaint States a Claim for Consumer Fraud ................................................. 13
       J.   The Complaint States a Claim for Fraud ............................................................... 14
       K.   The Complaint States a claim for IIED ................................................................. 15
       L.   The Complaint States a Claim for Invasion of Privacy .............................................. 16
III.   CONCLUSION ............................................................................................................. 17

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................4
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................3
*Bellocchio v. Italia Flotte Riunite Cosulich Line*
   84 F.2d 975 (2d Cir. 1936)
*Coleman v. Md. Ct. of Apps.*,
   626 F.3d 187 (4th Cir. 2010)....................................................................................4
*Dessert Beauty, Inc. v. Platinum Funding Corp.*,
   519 F.Supp.2d 410 (S.D.N.Y.2007)........................................................................11
*E.I. du Pont de Nemours & Co. v. Kolon Indus.*,
   637 F.3d 435 (4th Cir. 2011) ....................................................................................4
*Erickson v. Pardus*,
   551 U.S. 89 (2007).....................................................................................................4
*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
   783 F.3d 395 (2d Cir. 2015)......................................................................................8
*Floyd v. Lykes Bros. S.S. Co., Inc.*,
   844 F.3d 1044,1047 (3rd Cir. 1988) ........................................................................5
*Goode v. Oceanic Steam Nav. Co.*
   251 F. 556 (2d Cir. 1918)……………………………………………………….. 9
*In re Horizon Cruises Litig.*
   101 F. Supp. 2d 204 (S.D.N.Y. 2000) ……………………………………………12
*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
513 U.S. 527 (1995).......................................................................................................2
*Marshall v. Westfal-Larsen & Co.*
   259 F.2d 575 (9th Cir. 1958) …………………………………………………….. 9
*In re Montagne*,
   413 B.R.148 (Bankr.D.Vt.2009)..............................................................................11
*Nat'l Fed'n of the Blind v. The Container Store, Inc.*,
   904 F.3d 70 (1st Cir. 2018).....................................................................................10
*In re Plaquemine Towing Corp.*
   190 F. Supp. 2d 889 (M.D. La. 2002) ……………………………………………12
*Romero Reyes v. Marine Enterprises, Inc.*
   494 F.2d 866 (1st Cir. 1974)
*Stover v. Experian Holdings, Inc.*,
   978 F.3d 1082 (9th Cir. 2020) ..................................................................................6
*Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*,
   716 F. 2d 220 (3d Cir. 1983)....................................................................................8
*Tullis v. Fidelity & Cas. Co. of N.Y.*

    397 F.2d 22 (5th Cir. 1968) ……………………………………………………………9

*Washington Metro. Area Transit Auth. v. Reading*
    674 A.2d 44 (Md. Ct. Spec. App. 1996) ………………………………..….………8
*White v. United States*
    53 F.3d 43 (4th Cir. 1995) ……………………………………………………… 9
*Wilburn Boat Co. v. Fireman's Fund Ins. Co.*,
    348 U.S. 310 (1955)..................................................................................................5

*Yamaha Motor Corp. v. Calhoun*,
    516 U.S. 199 (1996)..................................................................................................5

**Statutes & Rules**

| | |
|---|---|
| Federal Maritime Jurisdiction | 28 U.S.C. § 1333(1) |
| Supplemental Jurisdiction | 28 U.S.C. § 1367(a) |
| Limitation of Liability for Negligence | 46 U.S.C. § 183c |
| Federal Rules of Civil Procedure | Fed. R. Civ. P. 8(a)(2) |
| Federal Rules of Civil Procedure | Fed. R. Civ. P. 12(b)(6) |
| Florida Deceptive and Unfair Trade Practices Act | Fla. Stat. §§ 501.201–501.213 |

Plaintiff, Jenny Phenix, by and through her undersigned counsel, respectfully submits this Memorandum of Law in Opposition to the Motions to Dismiss the Complaint filed by Defendants, Villa Vie Residences Incorporated ("VVRI"), VV Odyssey, LLC ("VV"), and Villa Vie Residences Corporation ("VVRC") (collectively "Defendants" or the "VILLA VIE GROUP").

## I. BACKGROUND

This lawsuit involves the claims of Jenny Phenix in connection with the sale of residential cruise ship services by Villa Vie Residences Incorporated, Villa Vie Residences Corporation, VV Odyssey LLC, and the M/V ODYSSEY pursuant to solicitations and materials drafted by Defendants and disseminated to Jenny in Florida. The Defendants refer to themselves in the materials they presented to plaintiff as "VVRI". Since those are the same initials as one of the defendants, we have instead referred to them collectively as the VILLA VIE GROUP.

In December of 2023, Jenny arranged with the VILLA VIE GROUP for a residential cabin on the Cruise Ship Odyssey with a May 15, 2024, departure. The defendants accepted her deposit but repeatedly delayed departure, altered terms without consent, reduced promised amenities, changed itineraries (removing U.S., Canadian, and Chinese ports), and failed to deliver the agreed services. After receiving notice that the ship was ready to embark, Jenny traveled to the port of embarkation but was kept waiting for months in Belfast, incurred extensive travel and living expenses, and turned over her baggage for stowage in her accommodation.

On July 18, 2024, Jenny was called back against by defendants to return to Belfast from her travels at the request and notice of defendants of the embarkation of the cruise only to receive an email on July 19, 2024 from defendants unilaterally canceling Jenny's arrangements citing

4

"negativity" and communications "impacting community morale," which were false, not contractually justified, pretextual, and based on a deprivation of Jenny's privacy. Defendants accessed and shared Jenny's private WhatsApp messages without her consent in violation of her privacy rights and then made defamatory public statements about her.

Despite partial refunds and eventual return of her luggage, Jenny is owed a refund of more than $7,230 paid to the defendants, she has suffered significant financial losses of more than $30,000 in travel and living expenses caused by the defendants' conduct, she also suffered reputational harm, and emotional distress.

In sum, the defendants collectively deprived Jenny of the benefits of her bargain as a punishment for her privately communicated complaints about the defendants conduct. They then doubled down and further sought to harm her by refusing to refund her deposit that even they agree she was entitled to. The inference from the conduct alleged is that defendants did so in retaliation for her private postings that pointed out the numerous misrepresentations and false statements made by the defendants regarding the residential cruise offering made in connection with the Cruise Ship Odyssey. Jenny is entitled to a remedy for the defendants' egregious conduct clearly identified in the Complaint.

## II.     ARGUMENT

### A. Legal Standard

To survive a motion to dismiss, Plaintiffs must establish only that they have stated a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The plaintiff's complaint "need

only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted). A complaint that contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' meets this standard when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

### B. Maritime Law Is Supplemented with State Law in Many Situations

The exercise of admiralty jurisdiction does not "result in automatic displacement of state law." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995). Maritime law is supplemented by state law in certain situations where maritime law is silent or when a court finds that state law doesn't contradict or undermine the principles of maritime law. *Floyd v. Lykes Bros. S.S. Co., Inc.*, 844 F.3d 1044, 1047 (3rd Cir. 1988). State law supplements maritime contract law even in cases involving marine insurance. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320–21 (1955) (holding that state law governed the effect of marine insurance warranties). State law may supplement federal maritime law with additional remedies for maritime torts. *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 202, 215 (1996) (upholding against a preemption challenge state remedies for the wrongful death of a non-seafarer in state territorial waters in the absence of federal remedies).

Under these circumstances, state law can supplement the general maritime law to fill a gap. Clearly no harm is done to maritime law by applying state law remedies to fill the gap to prevent circumstances of consumer fraud and sharp practices as alleged in the Complaint to protect the legitimate interests of residential cruise ship passenger in connection with services and treatment.

### C. The Complaint Plainly Advises the Defendants with Sufficient Notice of the Claims and Grounds

Defendants complain that the Complaint contains "shotgun pleading" with overly broad, vague statements that fail to clearly articulate the claims and supporting facts for each cause of action. They seem to ignore the detailed factual paragraphs supported by attached exhibits which should make it perfectly clear for the defendants and the court to understand the specific claims being made.

Of the four standards of analysis relied upon by defendants only one applies in this case. Admittedly, after providing a detailed factual recitation of the events leading up to and proceeding after the unilateral termination of the plaintiff's contract, each count adopts the allegations of all preceding counts.

However, given the Complaint does provide fair notice of the claims and grounds, as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure. This includes identifying the specific facts and legal theories relevant to each claim. It is difficult to believe that a sophisticated business group would be unable to understand the claims that are being raised.

The factual allegations are extensive and are alleged with sufficient specificity to make the claims plausible. The Complaint does not run afoul of the shot gun rule.

### D. VVRC and VVO Were All Identified as Parties by Role in the Contract

Contrary to the position of set forth by the defendants which apparently relies on a document outside of the Complaint, the contract sued upon does not identify only defendant VVRI as a counterparty. The contract (Exhibit 1 to the Complaint) on page 3 in Section 1 entitled "Definitions" specifically stated that the agreement was with a group of parties collectively

identified as VVRI and further defined the term as:

> 2. "VVRI" shall mean and include Ship #1 (the Vessel), and all its owners, operators, employees, agents, charterers, and water tenders. The term "Voyager" shall include the plural where appropriate and means all persons or entities booking or

Because one of the defendants already has the initials "VVRI", to avoid confusion in the Complaint, the plaintiff alleges the collective group responsible under the contract identified as "Villa Vie Group". VVRC and VVO each fall under the categories of collective counterparties to the plaintiff's contract. The defendants clearly worked together to sell and service residential cruise ship passengers. While the contract did not specify which entity was subject to which terms or obligations under the contract, it is clear that each had roles to play.

The cases cited by defendants rely on principles of agency in cases where ethe parties were not identified in any way in the underlying contract. Here, VVRC and VVO are implicated as defendants in this matter because they were identified by their roles as part of the collective group responsible for the plaintiff's residential cruse services.

As the detailed factual allegations of the Complaint establish, the scope of problems with service and ship are so extensive that the court may infer at this stage of the pleadings that the cruise operations, ship operator and ship owner all bear responsibility for some or all of the harm sustained by the plaintiff. When the evidence to differentiate responsibility among the collective unit of parties is exclusive to them, then the factual allegations are sufficient to generate the inferences necessary to overcome a motion to dismiss. The Complaint must stand against VVRC and VVO as defendants.

E.  **The Complaint States a Claim for Breach of Contract**

As set forth above, VVRC and VVO were parties to the contract, VVRI obligated them to its terms and they may be sued for breach of the contract. The Complaint adequately states a

claim against them for breach of contract. Interestingly, they both seek to employ defenses utilizing various provisions of the very contract they contend they were not a party to. The Complaint must stand against VVRC and VVO as defendants.

The defendants' motion concedes that the plaintiff's contract was unilaterally terminated but ignores the fact that no payment, even the payment they concede was owed, has been paid. For this ground alone, the motion to dismiss the claim for breach of contract must be denied.

The balance of the motion seeking to dismiss the breach of the contract count quibbles about damages that the plaintiff is not entitled to under the maritime law or limitations on damages that plaintiff is entitled to. This argument relies on documents and information outside of the Complaint that are not permissible for consideration on a motion to dismiss. The breach of contract count must stand against all defendants.

Defendnats seek to defend their egregious conduct by relying on complex arguments of maritime law and exculpatory provisions in their contract that limit or exonerate them from any liability in any circumstance. Although litigation regarding cruise ships is rife with complexity, cruise ships are classified under the maritime law as common carriers and are held to a reasonable standard of care under the circumstances. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332,1334 (11th Cir. 1984). As such, cruise ships may not disclaim liability for damage, or delay caused or contributed by the ship's negligence. *See, Royal Ins. Co. of Am. V. Southwest Marine*, 194 F. 3d 1009, 1016 (9th Cir. 1999). Disclaimer of liability for negligence appears to be the most applicable to this suit. However, 46 U.S.C.A. §183c expressly invalidates any contract provision purporting to limit a ship's liability for negligence to its passengers. *Kornberg,* 741 F.2d at 1335. Passenger tickets may contain clauses that attempt to disclaim liability for a variety of problems, but disclaimers for gross negligence and intentional misconduct are not typically

enforced when raised by common carriers. *See Washington Metropolitan Area Transit Authority v. Reading*, 674 A.2d 44 (Md.App. 1996); *Bellocchio v. Italia Flotte Riunite Cosulich Line*, 84 F.2d 975 (2d Cir. 1936). *Tullis v. Fidelity and Casualty Co. of New York*, 397 F.2d 22 (5th Cir. 1968); *Marshall v. Westfal-Larsen & Co.*, 259 F.2d 575 (9th Cir. 1958); *Goode v. Oceanic Steam Nav. Co.*, 251 F. 556 (2d Cir. 1918); *see also, White v. United States of America* 53 F.3d 43 (4th Cir. 1995), *Florida Fuels, Inc. v. Citgo Petroleum Corp*. 6 F.3d 330 (5th Cir. 1993); *Romero Reyes v. Marine Enterprises, Inc*. 494 F.2d 866 (1974); *Russell v. City Ice & Fuel Co.*, 539 F.2d 1318 (4th Cir. 1976); *Kermarec v. Compagnie Generale Trans-Atlantic*, 358 U.S. 625, 79 S.Ct 406 (1959); *Marshall v. Westfal-Larsen Co.*, 259 F.2d 575 (9th Cir. 1958); *Meyers v. M/V Eugenio C*, 842 F. 2d 815 (5th Cir. 1988); *Urian v. Milstead*, 473 F.2d 948 (8th Cir. 1973).

A dispute about the amount of damages owed when liability is admitted and whether exculpatory provisions are applicable when a contract is void due to its illusory nature is not appropriate for a motion to dismiss. In any event, the Complaint adequately states a claim for breach of contract if the court determines that it was enforceable and not illusory buy its terms.

### F. The Complaint States a Claim for Promissory Estoppel

The plaintiff has adequately pleaded facts sufficient to establish the necessary elements of her claim for promissory estoppel. This claim is plead in the alternative to the contract claim. The plaintiff understands that she may prevail on only one or the other of such claims. While promissory estoppel "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations," there must be a valid contract in place that covers the disputed promises.

The defendants argue that plaintiff may be bound to terms and conditions on its website

that were changed after the plaintiff entered into her agreement with defendants. They urge other terms and conditions that what plaintiff signed. However, the law does not allow parties to retain an unrestrained right to unilaterally modify the terms of their agreements retroactively and without notice. Any attempt to do so renders the agreements illusory and, therefore, unenforceable. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020). To the extent that no contract was formed between the parties due to the illusory nature of its provisions, the contract may be deemed void. *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70 (1st Cir. 2018). Plaintiff reserves her right to proceed under quasi contractual and other remedies.

The facts establish that the defendants collectively made clear and definite promises to the plaintiff. These were made with the expectation that the plaintiff as promissee would rely on them. The facts establish reasonable reliance on the promise by the plaintiff as promisee. The facts sow substantial detriment to the plaintiff as promisee as a result of the reliance. Injustice can only be avoided by enforcing the promise. The court should not dismiss the promissory estoppel count at this time.

## G. The Complaint States a Claim for Conversion

The conversion claim must stand for the same reason that the promissory estoppel claim must stand. The maritime economic loss rule, which prohibits tort claims for economic losses arising from a contract, would only apply if there is a valid contract in place. Defendants do not dispute that they took and retain the plaintiff's deposits despite their unilateral termination of the contract. When money, as opposed to tangible property, is the subject of a conversion claim, courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion. Rather, plaintiff must show that the money in question

11

was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff s benefit. *Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F.Supp.2d 410 (S.D.N.Y.2007); *In re Montagne*, 413 B.R.148 (Bankr.D.Vt.2009).

Plaintiff has alleged facts which establish (1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership of the plaintiff's property; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to the immediate possession of the property; and (4) a demand for the possession of property. The facts here are sufficient to state a cause of action for conversion.

### H. The Complaint States a Claim for Unjust Enrichment

The unjust enrichment claim must stand for the same reason that the conversion, and promissory estoppel claims must stand. The complaint includes sufficient factual allegations to support the elements of unjust enrichment. The defendants received a benefit – plaintiff's money. The plaintiff suffered a loss or detriment. The defendants' enrichment was at the plaintiff's expense. The enrichment wasn't legally justified because the defendants unilaterally denied the plaintiff the benefit of her bargain.

This claim is also plead in the alternative to the contract claim. The plaintiff understands that she may prevail on only one or the other of such claims. The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.,* 716 F. 2d 220, 226 (3d Cir. 1983). Unjust enrichment may not proceed separately from breach of contract because it "is not an independent theory of liability but is the basis for a claim of quasi-contractual liability.

If the contract is determined to be illusory and void, plaintiff must be permitted to proceed

with her quasi-contractual causes of action including unjust enrichment.

### I. The Complaint States a Claim for Consumer Fraud

Cruise tickets are maritime contracts. Residential cruise ship provisioning is a maritime activity. The courts should allow the application of state consumer fraud statutes (e.g., Florida Deceptive and Unfair Trade Practices Act) to claims arising in the offering of or involving maritime contracts, unless overridden by federal maritime policy. While maritime law itself does not contain a "consumer fraud" statute, courts can apply state consumer protection laws to maritime contracts to fill the gap so long as they don't conflict with federal maritime principles. False and misleading statements inducing the purchase of a residential cruise package must be treated as fraud in the inducement. Cruise itinerary misrepresentations including missing advertised ports or not providing illustrated amenities where the operator knew the representations were false must be redressed, even under the maritime law. False advertising suits under state consumer protection laws involving travel/tourism packages protect passengers from fraudulent practices.

*In re Horizon Cruises Litigation*, 101 F. Supp. 2d 204, 213 (S.D.N.Y. 2000) and *In re Plaquemine Towing Corp.*, 190 F. Supp. 2d 889, 892-94 (M.D. La. 2002) both set forth an analytical framework for deciding the proper application of damages in claims brought under the general maritime law. A court must first evaluate the factual setting of the case and determine what statutory remedial measures, if any, apply in that context. If the situation is covered by a maritime statute and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well. The general maritime law will not expand the available damages when Congress has spoken to the relief it deems

appropriate or inappropriate. For passengers booking residential cruise packages, there is no such statute. In *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199 (1996) the Court held that a state wrongful death and survival statute could supplement federal remedies.

A consumer of residential cruise ship services must be entitled to recover damages against a supplier for any loss or damage suffered by the consumer because of a failure to comply with representations if it was reasonably foreseeable that the consumer would suffer such loss or damage because of such a failure. Given the nature of the services being provided by defendants, it was reasonably foreseeable that Jenny would suffer the disappointment and distress that she did. Courts have awarded double the cost of the fare as damages for disappointment and distress. Damages for what might broadly be described as mental harm consequent upon a breach of contract are also available at common law in categories where the harm is: 'pain and suffering' consequent upon physical injury; and 'vexation and discomfort" consequent upon physical inconvenience.

Citing to cases involving issues of established maritime law on issues other than cruise ship operator liability to passengers, defendants claim that maritime law preempts the state law consumer fraud statutes. Defendants cite to no established maritime precedent dealing with passengers. None of the cases cited involve passengers. As state above in section B, the maritime law is frequently supplemented with state law as it should here.

### J. The Complaint States a Claim for Fraud

The essential elements of a fraud claim include 'representation of a material existing fact, falsity, scienter, deception, and injury.'" *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001)  Here plaintiff alleges (1) a material misrepresentation or omission of fact; (2) which

14

the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015).

Plaintiff identifies numerous fraudulent acts such as advertising a "fully all-inclusive" cruise when instead undisclosed fees were charged (e.g., restaurant cover charges, room service upcharges). Defendants promoted specific ports of call or onboard features that were removed without disclosure, agreement or authority knowing such features or ports were impossible to provide. Defendants represented on multiple occasions that the vessel is "ready to sail" when they knew it was not ready, causing Jenny to become stranded and incur substantial unplanned expenses. Defendants intentionally misstated its compliance with safety or regulatory requirements (e.g., US Coast Guard or international port entry rules).

These false or misleading representation about itinerary, safety, amenities, costs, etc. were material in that the misrepresentation was important to Jenny's decision to pay the deposit and purchase the packages. Jenny relied and acted based on the false information and suffered damages in unrefunded deposits, out of pocket travel and boarding costs and other harm caused by the misrepresentations.

The complaint adequately states claims for fraud.

### K. The Complaint States a claim for IIED

In this case, after months of repeatedly delayed departures and defendants'' unilateral change of terms, further after the defendants notified Jenny that the ship was yet again ready to go, Jenny flew back to Belfast to board the ship and embark on the long promised voyage only to have the defendants deny her boarding and unilaterally cancel her contract without returning her deposit or luggage. To further add insult, defendants made false reports to the press about the

15

incident. In the circumstances of cruise ship conduct toward a passenger, it is hard to image conduct any more outrageous in character, or any more extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

The punitive nature of defendants' conduct must not be tolerated. The complaint adequately provides defendants with notice of the egregious conduct and resulting harm.

L. **The Complaint States a Claim for Invasion of Privacy**

As set forth in the Complaint, Jenny had a reasonable expectation of privacy in her private messages exchanged within a closed WhatsApp group comprised solely of passengers awaiting embarkation aboard the Cruise Ship Odyssey. The messages contained nonpublic personal communications relating to Jenny's experiences, concerns, and opinions about delays, safety, and conditions aboard the vessel. These communications were not matters of legitimate public concern and were not otherwise publicly available. Without Jenny's knowledge or consent, defendants, through their officers, employees, or agents, intentionally obtained, copied, and disclosed the contents of these private messages to third parties, including members of the press. The disclosure was made in such a manner that the private contents became or were substantially certain to become public knowledge. The disclosure was such that would be highly offensive to a reasonable person in Jenny's position, and in fact was highly offensive to Jenny. Clearly, Jenny did not authorize or consent to the acquisition or disclosure of these private communications. As a direct and proximate result of Defendants' unlawful disclosure of private facts, Jenny suffered humiliation, anxiety, emotional distress, and damage to her personal and professional reputation.

In addition to disclosing Jenny's private communications, Defendants gave publicity to statements that, when viewed in the context of the disclosed messages, portrayed Jenny in a false and misleading light—specifically, as being disruptive, "negative," and undermining "community morale" aboard the ship. These statements, and the context in which they were publicized, were false and created a substantially misleading impression of Jenny's behavior and character. The portrayal would be highly offensive to a reasonable person and was in fact highly offensive to Jenny. Defendants acted with knowledge of the falsity of the impression created or with reckless disregard for the truth. As a direct and proximate result of being placed in this false light, Jenny suffered humiliation, emotional distress, mental anguish, and reputational harm.

The complaint adequately states a claim for invasion of privacy.

### III.     CONCLUSION

For the reasons set forth above, this Court should deny Defendant's motion to dismiss. The Plaintiff's complaint contains sufficient factual allegations to state a claim for each count, and the Defendant's arguments are without merit. The Complaint is set with detailed factual paragraphs supported by attached exhibits which make it perfectly clear for the defendants and the court to understand the specific claims being made. The Complaint plausibly establishes that defendants collectively deprived Jenny of the benefits of her bargain as a punishment for her privately communicated complaints about the defendants conduct, that defendants doubled down and further sought to harm her by refusing to refund her deposit that even they agree she was entitled to, and that defendants did so in retaliation for her private postings that pointed out the misrepresentations and false statements made by the defendants regarding the residential cruise

offering made.   Jenny is entitled to a remedy for the defendants' egregious conduct.

WHEREFORE, for the reasons stated, Plaintiff respectfully requests that the Court deny the motion and direct that the defendants answer the complaint.

Dated: August 11, 2025                               GELLERT SEITZ BUSENKELL & BROWN, LLC

<u>/s/ Gary F. Seitz</u>
Gary F. Seitz (DE 4457)
1202 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (215) 238-0011
Facsimile:  (302)425-5814
gseitz@gsbblaw.com

*Counsel to Plaintiff*